# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **Javier Alvarez del Castillo, et al.,** | § | |
| | § | |
| | § | |
| **PLAINTIFFS** | § | **CIVIL ACTION NO. 4:14-cv-03435** |
| | § | |
| **vs.** | § | |
| | § | |
| **P.M.I. Holdings North America, Inc.,** | § | |
| **et al.,** | § | |
| | § | |
| **DEFENDANTS** | § | |


## PLAINTIFFS' THIRD AMENDED ORIGINAL COMPLAINT


TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, JAVIER ALVAREZ DEL CASTILLO, CARLOS ALBERTO GUZMAN HUESCA, NORA SILVIA CASTILLO ALFERES, INDIVIDUALLY AND AS NEXT FRIEND OF JUAN MAXIMILIANO VAZQUEZ CASTILLO, DENISSE GUERRERO GRANADO, INDIVIDUALLY AND AS NEXT FRIEND OF ROSEMARY DE LA FUENTE, JUAN EDUARDO MARTINEZ NAVARRO, INDIVIDUALLY AND AS NEXT FRIEND OF DIBANHI SARAI MARTIEZ GUERRA, EDUARDO AZAEL MARTINEZ GUERRA, SANDRA EDITH DURAN AS NEXT FRIEND OF SAMIRA ARELLANO, JOSE LUIS HERNANDEZ, HERMINIO MARTINEZ OSORIO, MIGUEL SANCHEZ CRUZ, ARELITO MARTINEZ MORELOS, LESLY ELIZABETH FLORES, LESLY ELIZABTH FLORES, MARIA LUZ MORALES PEREZ, JOSE MORALES REYES, BEATRIZ MARQUEZ LEON INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE

OF VICTOR CHAVEZ MARQUEZ, EULALIA TOMAS DEL ANGEL AND

VICTORINO PEREZ GARCES AS REPRESENTATIVES OF THE ESTATE OF

VICTOR PEREZ TOMAS, LUIS JAVIER MENDIOLA CHAVEZ AND ANAILEM

MORA GARCIA, ARON GARCIA FLORES AND IRMA FERREL CASADOS,

CRISTAL ANAHI OLVERA RAMIREZ INDIVIDUALLY AND AS NEXT OF

FRIEND OF FRANCISCO JAVIER HERNANDEZ MARTINEZ AND

ADDITIONALLY AS NEXT FRIEND OF ESTAFANIA ANAHI HERNANDEZ

OLVERA, MARIA DE JESUS MARTINEZ CASARES INDIVIDUALLY AND AS

NEXT OF FRIEND OF FRANCISCO JAVIER HERNANDEZ MARTINEZ, ELEAZER

HERNANDEZ GUTIERRIEZ INDIVIDUALLY AND AS NEXT OF FRIEND OF

FRANCISCO JAVIER HERNANDEZ MARTINEZ, DIANA ISABEL VASQUEZ

SILVA INDIVIDUALLY AND AS NEXT OF FRIEND OF HILLARIO GUTIERREZ

QUIRINO, GUADALUPE PENA GALVAN INDIVIDUALLY AND AS NEXT OF

JAMIE CRUZ HERNANDEZ AND ADDITIONALLY AS NEXT FRIEND OF

HANNIA ALEXANDRA CRUZ PENA AND STEPHANIE LIZETH CRUZ PENA

AND GRECIA MICHEL CRUZ PENA, DELFINA NATIVIDAD VILLANUEVA

LOREDO INDIVIDUALLY AND AS NEXT OF FRIEND OF ROBERTO ORTIZ

MARQUEZ, TANIA YAREN GARCIA ACUNA INDIVIDUALLY AND AS NEXT

OF FRIEND OF JESUS PLIEGO LANDA, MARIA TERESA RODRIGUEZ

PANCARDO INDIVIDUALLY AND AS NEXT OF FRIEND OF RICARDO JESUS

MERCADO RODRIGUEZ, PATRICIA MUNOZ BANDA, JOSUE ABRAM MUNOZ

INDIVIDUALLY AND AS NEXT OF FRIEND OF LUIS CARLOS MUNOZ

MARTINEZ, CARLOS I. MUNOZ INDIVIDUALLY AND AS NEXT OF FRIEND OF

LUIS CARLOS MUNOZ MARTINEZ, BREANDA BERENIS MUNOZ INDIVIDUALLY AND AS NEXT OF FRIEND OF LUIS CARLOS MUNOZ MARTINEZ, MARIA SAN JUANA MORENO ESCOBAR INDIVIDUALLY AND AS NEXT OF FRIEND OF ULISES RIOS PECINA MORENO AND MARCELINO RIOS PECINA INDIVIDUALLY AND AS NEXT OF FRIEND OF ULISES RIOS PECINA MORENO, CESAREA GUADALUPE MARTINEZ MARTINEZ INDIVIDUALLY AND AS NEXT OF FRIEND OF ROSARIO GERONIMO DIAZ, JOSE LUIS MARTINEZ NOLASCO, JUAN RAMON MUNOZ, RUTH SARAHI CANTU VASQUEZ INDIVIDUALLY AND AS NEXT FRIEND OF ULISES NOEL AVENDANO, EVELYN MARISOL LUNA SANTOS AND JAVIER MARTINEZ DEL ANGEL, ARCENIO SANCHEZ LUCIANO, JESUS GUADALUPE CAMARILLO VALDEZ, MARCO ANTONIO DUARTE MEDELLIN, CARLOS ALBERTO MARTINEZ, DELTA ALICIA ZAMORA GALVAN, INDIVIDUALLY AND AS NEXT OF FRIEND OF IRVING FERNANDO ZAMORA GALVAN AND JORGE ALFREDO ZAMORA GALVAN AND JOSE LUIS ZAMORA GALVAN, AND LETICIA AGUILAR-SANCHEZ and in support thereof would show unto Court as follows:

## I. PARTIES

1.      Plaintiff, NORA SILVIA CASTILLO ALFERES is the wife of Juan Jose Vazquez Trevino, deceased. Plaintiff Nora Silvia Castillo Alferes and Juan Jose Vazquez Trevino are parents of minor child, Juan Maximiliano Vazquez Castillo. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity

as Beneficiary and Heir of the Estate of Juan Jose Vazquez Trevino and as Representative of all Wrongful Death Beneficiaries of Juan Jose Vazquez Trevino, Deceased.

2.     Plaintiff, DENISSE GUERRORO GRANADO is the wife of Victor Manuel Gomez Vargas, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Victor Manuel Gomez Vargas and as Representative of all Wrongful Death Beneficiaries of Victor Manuel Gomez Vargas, Deceased.

3.     Plaintiff, JUAN EDUARDO MARTINEZ NAVARRO is the husband of Damaris Guerra Garrido de Martinez, deceased. Plaintiff. Juan Eduardo Martinez Navarro and decedent, Damaris Guerra Garrido de Martinez are the parents of Dibahni Sarai Martinez Guerra, Minor Child. Plaintiff JUAN EDUARDO MARTINEZ NAVARRO brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in his individual Capacity as Beneficiary and Heir of the Estate of Damaris Guerra Garrido de Martinez and as Representative of all Wrongful Death Beneficiaries of Damaris Guerra Garrido de Martinez, Deceased.

4.     Plaintiff, EDUARDO AZAEL MARTINEZ GUERRO is the son of Damaris Guerra Garrido de Martinez, Deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in his individual Capacity as Beneficiary and Heir of the Estate of Damaris Guerra Garrido de Martinez and as Representative of all Wrongful Death Beneficiaries of Damaris Guerra Garrido de Martinez, Deceased.

5.     Plaintiff, SANDRA EDITH DURON AS NEXT FRIEND OF SAMIRA ARELLANO and decedent, Omar Arellano Rocha, deceased, are parents of Samira Arellano, Minor Child. Plaintiff SANDRA EDITH DURON AS NEXT FRIEND OF

SAMIRA ARELLANO brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Omar Arellano Rocha and as Representative of all Wrongful Death Beneficiaries of Omar Arellano Rocha, Deceased.

6.      Plaintiff, LESLY ELIZABETH FLORES is the wife of Angel Carlos Marie Morales, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Angel Carlos Marie Morales and as Representative of all Wrongful Death Beneficiaries of Angel Carlos Marie Morales, Deceased.

7.      Plaintiff, MARIA LUZ MORALES PEREZ is the wife of Angel Rafael Marie Velasquez, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Angel Rafael Marie Velasquez and as Representative of all Wrongful Death Beneficiaries of Angel Rafael Marie Velasquez, Deceased.

8.      Plaintiff, FELIPE MORALES REYES is the father of Felipe Jesus Morales Perez, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in his individual Capacity as Beneficiary and Heir of the Estate of Felipe Jesus Morales Perez and as Representative of all Wrongful Death Beneficiaries of Felipe Jesus Morales Perez, Deceased.

9.      Plaintiff, BEATRIZ MARQUEZ LEON is the mother of Victor Chavez Marquez, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Victor Chavez

Marquez and as Representative of all Wrongful Death Beneficiaries of Victor Chavez Marquez, Deceased.

10.     Plaintiffs, EULALIA TOMAS DEL ANGEL and VICTORINO PEREZ GARCES are parents of Victor Perez Tomas. Plaintiffs bring these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in their individual Capacity as Beneficiary and Heir of the Estate of Victor Perez Tomas and as Representative of all Wrongful Death Beneficiaries of Victor Perez Tomas, Deceased.

11.     Plaintiff, CRISTAL ANAHI OLVERA RAMIREZ is the wife of Francisco Javier Hernandez Martinez. Plaintiff CRISTAL ANAHI OLVERA RAMIREZ and decedent, Francisco Javier Hernandez Martinez were the parents of Estefania Anahi Hernandez Olvera. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in their individual Capacity as Beneficiary and Heir of the Estate of Francisco Javier Hernandez Martinez and as Representative of all Wrongful Death Beneficiaries of Francisco Javier Hernandez Martinez, Deceased.

12.     Plaintiffs, MARIA DE JESUS MARTINEZ CASARES and ELEAZAR HERNANDEZ GUTIERREZ are the parents of Francisco Javier Hernandez Martinez, deceased. Plaintiffs bring these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in their individual Capacity as Beneficiary and Heir of the Estate of Francisco Javier Hernandez Martinez and as Representative of all Wrongful Death Beneficiaries of Francisco Javier Hernandez Martinez, Deceased.

13.     Plaintiff,  DIANA ISABEL VASQUEZ SILVA is the wife of Hillario Gutierrez Quirino. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Hillario Gutierrez

Quirino and as Representative of all Wrongful Death Beneficiaries of Hillario Gutierrez Quirino, Deceased.

14.    Plaintiff, GUADALUPE PENA GALVAN is the wife of Jaime Cruz Hernandez. Plaintiff GUADALUPE PENA GALVAN and decedent, Jaime Cruz Hernandez are the parents of Hannia Alexandra Cruz Pena, Stephanie Lizeth Cruz Pena and Grecia Michel Cruz Pena. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Jamie Cruz Hernandez and as Representative of all Wrongful Death Beneficiaries of Jamie Cruz Hernandez, Deceased.

15.    Plaintiff, DELFINA NATIVIDAD VILLANUEVA LOREDO is the wife of Jose Roberto Ortiz Marquez. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Jose Roberto Ortiz Marquez and as Representative of all Wrongful Death Beneficiaries of Jose Roberto Ortiz Marquez, deceased.

16.    Plaintiff, TANIA YAREN GARCIA ACUNA is the wife of Jesus Pliego Landa. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Jesus Pliego Landa and as Representative of all Wrongful Death Beneficiaries of  Jesus Pliego Landa, deceased.

17.    Plaintiff, MARIA TERESA RODRIGUEZ PANCARDO is the mother of Ricardo de Jesus Mercado Rodriguez. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Ricardo de Jesus Mercado Rodriguez and as Representative of all Wrongful Death Beneficiaries of Ricardo de Jesus Mercado Rodriguez, deceased.

18.     Plaintiff, PATRICIA MUNOZ BANDA is the wife of Luis Carlos Munoz Martinez, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Luis Carlos Munoz Martinez and as Representative of all Wrongful Death Beneficiaries of Luis Carlos Munoz Martinez, deceased.

19.     Plaintiffs, JOSUE ABRAM MUNOZ, CARLOS I. MUNOZ AND BRENDA BERENICE MUNOZ, are the children of Luis Carlos Munoz Martinez, deceased. Plaintiffs bring these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in their individual Capacity as Representative of all Wrongful Death Beneficiaries of Luis Carlos Munoz Martinez, Deceased.

20.     Plaintiff, MARIA SAN JUANA MORENO ESCOBAR is the mother of Ulises Pecina Rios Moreno, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Ulises Pecina Rios Moreno and as Representative of all Wrongful Death Beneficiaries of Ulises Pecina Rios Moreno, deceased.

21.     Plaintiff, MARCELINO RIOS PECINA is the father of Ulises Pecina Rios Moreno, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in his individual Capacity as Beneficiary and Heir of the Estate of Ulises Pecina Rios Moreno and as Representative of all Wrongful Death Beneficiaries of Ulises Pecina Rios Moreno, deceased.

22.     Plaintiff, CESAREA GUADALUPE MARTINEZ MARTINEZ is the wife of Rosario Geronimo Diaz, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate

of Rosario Geronimo Diaz and as Representative of all Wrongful Death Beneficiaries of Rosario Geronimo Diaz, deceased.

23.     Plaintiff, RUTH SARAHI CANTU VASQUEZ is the wife of Bruno Ulises Avendano Rojas, deceased. Plaintiff RUTH SARAHI CANTU VASQUEZ and Bruno Ulises Avendano Rojas, deceased were the parents of Ulises Noel Avendano, a Minor Child. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Bruno Ulises Avendano and as Representative of all Wrongful Death Beneficiaries of Bruno Ulises Avendano, deceased.

24.     Plaintiff, DELTA ALICIA ZAMORA GALVAN, is the wife of Jose Luis Zamora, deceased. Plaintiff DELTA ALICIA ZAMORA GALVAN and Jose Luis Zamora, deceased were the parents of Irving Fernando Zamora Galvan, Jorge Alfredo Zamora Galvan and Jose Luis Zamora Galvan, minor children. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004 in her individual Capacity as Beneficiary and Heir of the Estate of Jose Luis Zamora and as Representative of all Wrongful Death Beneficiaries of Jose Luis Zamora, Deceased.

25.     Plaintiff, LETICIA AGUILAR-SANCHEZ is the mother of Ignacio Cedillo Aguilar, deceased. Plaintiff brings these claims herein pursuant to Civ. Prac. Rem. Code §71.004  in her individual Capacity as Beneficiary and Heir to the Estate of Ignacio Cedillo Aguilar and as Representative of all Wrongful Death Beneficiaries of Ignacio Cedillo Aguilar, deceased.

26.     Plaintiffs JAVIER ALVAREZ DEL CASTILLO, CARLOS ALBERTO GUZMAN HUESCA, JOSE LUIS HERNANDEZ HERNANDEZ, HERMINIO

MARTINEZ OSORIO, MIGUEL SANCHEZ CRUZ, ARELITO MARTINEZ MORELOS, LUIS JAVIER MENDIOLA CHAVEZ, ARON GARCIA FLORES, JOSE LUIS MARTINEZ NOLASCO, JUAN RAMON MUNOZ, JAVIER MARTINEZ DEL ANGEL, ARCENIO SANCHEZ LUCIANO, JESUS GUADALUPE CAMARILLO VALDEZ, MARCO ANTONIO DUARTE MEDELLIN, CARLOS ALBERTO MARTINEZ were seriously injured as a result of the explosion made the basis of this lawsuit. In addition to the injured plaintiffs and wrongful deaths claims, Plaintiffs EVELYN MARISOL LUNA SANTOS, wife of injured Plaintiff, JAVIER, MARTINEZ DEL ANGEL, ANAILEM MORA GARCIA, wife of injured Plaintiff, LUIS JAVIER MENDIOLA CHAVEZ and IRMA FERRAL CASADOS, wife of injured Plaintiff, ARON GARCIA FLORES are filing claims for loss of consortium, household services, medical services provided to their injured husbands.

27.     Pemex is a person or entity doing business as Pemex on or about the date of the occurrence in question and was responsible for operations at or near the location of the occurrence in question on both sides of the border between Texas and Mexico. Said defendant may be served by serving its registered agent, Daniel Giron, at 7526 Cavesson Drive, Cypress, Texas 77433.

28.     P.M.I. Holdings North America, Inc., P.M.I Holdings Inc., P.M.I. Comercio Internacional, S.A. de C.V. and P.M.I. Inc., are persons or entities doing business as P.M.I on or about the date of the occurrence in question and were responsible for the operations at or near the location of the occurrence in question on both sides of the border between Texas and Mexico. P.M.I. Inc. may be served by serving its registered agent Ismael Hernandez at 909 Fannin Street, Suite 3200, Houston, Texas 77010.

29.     P. M. I. Holdings North America, Inc. is a foreign corporation organized under the laws of the State of Delaware, with its principle place of business located at 909 Fannin Street, suite 3200, Houston, Texas, 77010. It can be served with process by serving its President, Fernando Canut or its registered agent for service of process, Fernando Luna at the above address. It is a subsidiary and operates under the direction and control of Petroleos Mexicanos  Exploracion y Producion, Inc., or PeMex Exploration and Production, Inc., and is also the alter ego of PeMex or Petroleos Mexicanos or (it's English name Mexican Petroleum).  P. M. I. Holdings North America, Inc., operates as an engineering services arm of PeMex and PeMex Exploration and Production in the United States, specifically, the State of Texas. P. M. I. North America Holdings, Inc, specifically through Ismael Hernandez Amor acts as an alter ego or directs P. M. I. Norteamericas S. A. De C. V. and P. M. I. Services North America allegedly a subsidiary of the company. P. M. I. North America Holdings, Inc., and acts as an engineering services company and upon information and belief supplies engineers both for training and to provide engineering services between its alter ego, PeMex Exploration and Production, and/or the owner of the plant involved in this accident, either PeMex Exploration and Production, PeMex –Gas and Basic Petrochemistry, or PeMex Petrochemistry, or PeMex Refining. P. M. I. Holdings North America, Inc. also provides engineers employed by the various PeMex defendants to the Shell Oil Company Deer Park refinery.

30.     P. M. I. Norteamerica, S. A. de C. V. is a Mexican corporation doing business in both Mexico and Texas which has been designated by the PeMex entities to act as the "Official" joint venture partner of Shell Oil in the Deer Park Refinery in Deer Park,

Texas. Employees are jointly employed by both P. M. I. Norteamerica S. A. de C. V. and P. M. I. Holdings North America, Inc., and they act not only as parent subsidiary but as alter egos of each other.

31.     P. M. I. Comercio Internacional, S. A. de C. V. operates as an alter ego of P. M. I. Holdings North America, Inc., and is the owner/alter ego of P. M. I. Norteameric S. A. de C. V. as well as a subsidiary of PeMex.  It is a foreign corporation with its principle place of business in Mexico City. P. M. I. Comerico Internacional may be served by serving either its registered agent or its Chief Executive Officer, Jose Manuel Carrera Panizzo at Avenida Marina Nacional, 329, Executive Tower, Floor 21, Col. Petroleos Mexicanos, Miguel Hildalgo, Mexico City, DF 11311, Mexico.

32.     P. M. I. Comercio Internacional in conjunction with P. M. I. Holdings North America, Inc., and other PeMex subsidiaries and affiliated companies, exports and imports crude oil, Liquid Natural Gas, Natural Gas and their derivatives into Mexico and then sells these products within Mexico or on the international markets, including the United States. The company engages in the trading of crude oil and byproducts including liquefied natural gas products. It provides land transportation, refining and marketing, storage terminals and pipelines for these products. It also provides commercial and management services to the various PeMex companies in order for them to engage in the commercial activities they engage in on behalf of PeMex or the affiliated or subsidiary PeMex companies. In addition, P. M. I. Comercio Internacional, signed a joint venture with another Texas corporation, NuStar, to develop a pipeline infrastructure to transport liquefied petroleum gases and refined products from Mont Belviu and Corpus Christi, Texas into Mexico. Upon information and belief, the liquefied natural gas products, and

"natural gas" transported and sold from Texas into the pipeline transporting them to the PeMex Exploration and Production or other PeMex subsidiary gas processing plant that was the sight of the accident was owned or managed by Defendant P. M. I. Comercio Internacional and/or P. M. I. North America Holdings, Inc. P. M. I. Comercio Internacional employee Margarita Perez, who is currently Commercial Director of Products at P. M. I., Comercio Internacional, worked as commercial Deputy Director of the Natural Gas area beginning in 1993. During this same time period, from 1993-1995, Ms. Perez served as Business and Operations Vice President of P. M. I. Holdings North America, Inc., in Houston, Texas, where she took part in the Deer Park refinery joint venture negotiations between PeMex and Shell. Fernando Luna, Chairman of P. M. I. Holdings, Inc., a Houston, Texas based company is an employee of P. M. I. Comercio Internacional S. A. de C. V. The operations of PeMex, PeMex Exploration and Production and the P. M. I. companies are so intertwined so as to be essentially one company. The companies have some of the same management and employees and operate under the same contracts. Even without the alter ego allegations, the PeMex and P. M. I. defendants conduct continuous and general business in the State of Texas and in fact, have consistent contacts with the events and occurrences involved in this accident through engineering services, the purchase and transportation of the natural gas, engaging various Texas companies to provide products and services to the plant including valves, inspection, monitoring and safety services, repair or maintenance services and technology including, engineering, operations and safety technology services. All of these facts combined indicate that the operation of the plant and the accident were not possible

without this Defendant's activities within the State of Texas and involving persons and companies from the state of Texas.

33.    P. M. I. Holdings, Inc. is believed to be an assumed name of the P. M. I. group of companies who are subsidiaries of PeMex or Petroleos Mexicanos. It is unknown at this time if an actual P. M. I. Holdings, Inc., exists other than the fact that Fernando Luna, an employee of P. M. I. Comercio Internacional, is also listed in various PeMex documents as an employee of P. M. I. Holdings, Inc. Upon information and belief, Mr. Luna is likely an employee of P. M. I. North America Holdings, Inc.

34.    The LNG and/or natural gas that is the subject of this suit and purchased in Texas, was transported through a pipeline system in Texas, metered at a metering station in Mexico and then processed at the gas processing plant outside of Reynosa. This LNG and/or natural gas was purchased by P. M. I. Comercial Internacional, S. A. de C. V. and/or P. M. I. Norteamerica, S. A. de C. V.,  P. M. I. Norteamerica Services S. A. de C. V., and/or P. M. I. Procurement, Inc. and/or P. M. I. Holdings North America, Inc. Until discovery is undertaken it is impossible to actually know which company actively engaged in which commercial activity either in concert or separately. It is known that these entities regularly engage in these and other commercial activities on behalf of the various PeMex companies involved in the case. It is also known that they do not operate as entirely separate legal entities but act in concert or jointly as needed to accomplish the business of PeMex.

35.    Defendant, Pemex Incorporated (hereinafter "Pemex") is a Texas Corporation with its principal place of business located in Katy, Fort Bend County, Texas. Pemex is involved in exploration, exploitation, refining, transportation, storage, distribution and

sale of petroleum, natural gas, and products obtained through refining and manufacture, storage, transportation, distribution and sale of natural gas and other petroleum derivatives. Said defendant may be served by serving its registered agent Daniel Giron at 7526 Cavesson Drive, Cypress, Texas 77433.

36.     Defendant, Pemex Procurement International, Inc. (herein after "PPI") is a foreign, for-profit corporation organized under the laws of the State of Delaware with its principal place of business located in Houston, Harris County, Texas. PPI is involved in the exploration, exploitation, refining, transportation, storage, distribution and sale of petroleum, natural gas and products obtained through refining and manufacture, storage, transportation, distribution and sale of natural gas and other petroleum derivatives. PPI Inc. is also involved in providing services to the various PeMex entities inside of Mexico including the gas processing plant where the explosion occurred. Said defendant may be served by serving its registered agent Fernando Cano-Lasa, at 2500 Citywest Blvd, Suite 2400, Houston, Texas 77042.

37.     Defendant PeMex Procurement International, Inc. is one of the alleged owners of the gas transported by pipeline to the gas processing plant where the explosion occurred, one of the commercial suppliers of products and services to the plant and acts as its commercial division for purchase of products and services within the State of Texas.

38.     Defendant Pemex in its Assumed or Common Name, Petroleos Mexicanos (Mexican Petroleum), is a foreign corporation organized under the laws of Mexico or the United Mexican States. Said Defendant is registered to do business in the United States and the State of Texas and in fact files various documents with the United States government including the Securities and Exchange Commission.  PeMex is involved in

the international trading of hydro-carbons, the exploration for oil and natural gas and the refining, marketing and importing/ exporting of hydrocarbons including Liquefied Natural Gas (LNG). PeMex through its domestic and foreign subsidiaries is involved in the exploration, refining, transportation, storage, distribution and sale of petroleum, natural gas and products obtained through refining and manufacture, storage, transportation, distribution and sale of natural gas and other petroleum derivatives. Said defendant may be served by serving its registered agent Mr. Emilio Ricardo Lozoya Austin, Chief Executive Officer and Director General, Avenida Marina Nacional, 329, Colonia Petroleos Mexicanos, Mexico, DF 11311 Mexico.

39.     Defendant Pemex Exploration and Production or Petroleos Mexicanos Expolracion y Producion S. A. de C. V.  is a subsidiary or related entity of Pemex or PeMex Incorporated.. Said Defendant may be served  by serving its Chairman of the Board, Mr. Emilio Ricardo Lozoya Austin at Avenida Marina Nacional, 329, Colonia Petroleos Mexicanos, Mexico DF 11311, Mexico.

40.     Defendant Pemex Refining is a subsidiary or related entity of Pemex or PeMex Incorporated. Said Defendant may be served by serving Pemex Incorporated through its registered agent, Mr. Emilio Ricardo Lozoya Austin, Chairman of the Board,  at Avenida Marina Nacional, 329, Colonia Petroleos Mexicanos, Mexico DF 11311, Mexico.

41.     Defendant Pemex -Gas and Basic Petrochemicals, (formerly named Basic Petro Chemistry), is a subsidiary or related entity of PeMex or PeMex  Incorporated. Said Defendant may be served by serving its registered agent Mr. Emilio Ricardo Lozoya Austin, Chairman of the Board,  at Avenida Marina Nacional, 329, Colonia Petroleos Mexicanos, Mexico DF 11311, Mexico.

42.     Defendant Pemex Petrochemicals,(formerly named, Pemex Petro Chemistry) is a subsidiary or related entity of Pemex, or PeMex  Incorporated. Said Defendant may be served by serving its registered agent Mr. Emilio Ricardo Lozoya Austin at Avenida Marina Nacional, 329, Colonia Petroleos Mexicanos, Mexico DF 11311 Mexico.

43.     Defendant Pemex Corporate is a subsidiary or related entity or assumed name of Pemex Incorporated. Said Defendant may be served by serving Pemex Incorporated through its registered agent Daniel Giron, at 7526 Cavesson Drive, Cypress, Texas 77433.

44.     Defendants Pemex Exploration and Production, Pemex Refining, PeMex Petrochemicals and Pemex Gas and Basic Petro Chemicals shall be referred to collectively herein as "PeMex." The various "PeMex" defendants along with the other entities they control, including alleged subsidiary "Mex Gas Internacional, LTD., which is incorporated in the Cayman Islands, but operates, along with PeMex and PeMex –Gas and Basic Petrochemistry and/or PeMex Exploration and Production through its alter egos the various PeMex organizations, collectively own and operate various gas processing plants, including the plant where the accident occurred.   The PeMex entities and the wholly owned subsidiaries and alter egso of  PeMex and its four basic subsidiaries,  PeMex-Gas and Basic PetroChemicals, PeMex-Refining, PeMex Petrochemicals, and PeMex Exploration and Production own and control the various refineries, gas processing plants and marketing operations of  PeMex. The PeMex entities own and operate various pipeline ventures, plants and gas processing plants in which the financing arms of PeMex, led by P. M. I. Comercio Internacional, S. A. de C. V. and P. M. I. Holdings North America, Inc., along with subsidiaries and alter egos, P. M. I.

Norteamerica, S. A. de C. V. and PeMex Procurement Internacional, Inc.(a Delaware corporation with its principle place of business in Houston , Texas), finance, manage, trade in hydrocarbons and provide various employees and engineering to the PeMex entities.

45.     Defendant Draeger Safety, Inc. (hereinafter "Draeger") is a foreign for-profit corporation organized under laws of the State of Pennsylvania and doing business in the State of Texas. This Defendant may be served with process in this matter by and through its Registered Agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

46.     Defendant Draeger Safety, Inc. was involved in the "Normalization Committee of Petroleous Mexicanos and Subsidiary Organizations: Technical Committee for the Exploration and Production of PeMex; System for Gas Detection and Alarms." This committee developed protocols adopted by PeMex and the PeMex entities for the prevention of gas explosions and fires, including preventing the escape of gas, such as occurred at the Gas Processing Plant outside Reynosa. It is believed that Draeger was not simply involved in the committee work, (which would also serve as a basis of liability), but provided technical services in gas detection and fire and explosion prevention used by PeMex at the gas processing plant and that the company provided technical inspection, detection and support services to the actual plant as part of their employment with PeMex. These services, including the technical component of the services, serving on the committee and providing advice on the prevention of gas explosions and fires, and the detection, monitoring, and prevention systems failed which lead to the explosion, fire and deaths and injuries to Plaintiffs. Draeger has offices in the State of Texas and provided

engineering, technical and safety services from those offices to the various PeMex clients in Mexico. Draeger's actions and activities give rise to not only liability but rise to the level of jurisdictional actions.

47.     Defendant FireBus Systems Inc. (hereinafter "FireBus) is a domestic for-profit corporation with its principal place of business in Houston, Harris County, Texas. This Defendant may be served with process in this matter by and through its registered agent, I&C International, Inc. 12818 Century Drive, Suite 101, Stafford, Texas 77477.

48.     Defendant Firebus Systems Inc. was also involved in the "Normalization Committee of Petroleous Mexicanos and Subsidiary Organizations: Technical Committee for the Exploration and Production of PeMex; System for Gas Detection and Alarms." This committee developed protocols which were adopted by PeMex and the PeMex entities for the prevention of gas explosions and fires, including preventing the escape of gas, such as occurred at the Gas Processing Plant outside Reynosa. It is believed Firebus was not simply involved in the committee work, (which would also serve as a basis of liability), but provided technical services in gas detection, safety and equipment and was also involved in providing these services to the actual gas processing plant as part of their employment with PeMex. These services, including the technical component of the services serving on the committee and providing advice on the prevention of gas explosions and fires, and the detection, monitoring, and prevention systems failed and lead to the explosion, fire and deaths and injuries to the Plaintiffs. Firebus has or had offices in the state of Texas and provided engineering, technical and safety services from those offices to the various PeMex clients in Mexico. Firebus actions and activities give rise to not only liability but rise to the level of jurisdictional actions.

49.     Defendant I&C International (hereinafter "I&C) is a domestic for-profit corporation with its principal place of business in Houston, Harris County, Texas. Said Defendant may be served by serving its registered agent Maria Del Rosario Skone, 6000 Hollister, #2011, Houston, Texas 77040.

50.     I & C International also served on the above committee and its actions and activities are the same as Draeger's and Firebus. Plaintiff adopts the allegations contained within paragraphs 45 and 47 in their entirety against I & C.

51.     Defendant Honeywell Analytics, Inc. (hereinafter "Honeywell") is a for-profit corporation organized under the laws of the State of New Jersey and doing business in the State of Texas. Said Defendant may be served by serving its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

52.     Defendant Honeywell Analytical Inc. was also a member of the technical committee on gas explosion and fire prevention and Plaintiff adopts the allegations contained within paragraphs 45, 47 and 49 in their entirety against Honeywell Analytical. In addition it is believed that the original operating system that failed, was defectively designed, manufactured and marketed and contained warning or instruction defects, was improperly installed, repaired, or maintained by the Honeywell Analytical Defendant. The product defect and negligence of Honeywell in these manners was the proximate and producing cause of Plaintiffs' damages. In addition, Honeywell breached its warranty of implied merchantability regarding its product and the services surrounding the product resulting in the applicable four year statute of limitations for all Plaintiffs. Honeywell analytical is also believe to have been involved in providing services for the integration

of the Emerson Electric Delta "V" product that was intended to digitize the plants' operating systems.

53. Defendant Remote Control, Inc. is a for-profit corporation doing business in the state of Texas. Said defendant may be served by serving its registered agent, Dale Stepanek at 77 Circuit Drive, North Kingston, Rhode Island 02852,

54. Defendant Rotork Control, Inc. (hereinafter "Rotork") is a foreign for-profit corporation organized under the laws of the State of Delaware and doing business in the State of Texas with its principle place of business in Houston, Texas.. Said Defendant may be served by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

55. Defendant Rotork Servo Controles de Mexico SA de C.V is a company doing business in Texas. Said defendant may be served by serving its registered agent Abel Gutierrez, Centeotl #223, Col. Industrial San Antonio CP 02760, Delegacion Azcapotzalco, Mexico DF 03100.

56. Defendant Rotork U.K. LTD. is a parent or related entity of Rotork Servo Controles de Mexico SA de CV, Remote Control, Inc., Rotork Control, Inc. and Rotork Houston.  Said Defendant may be served by serving Rotork Servo Controles de Mexico SA de CV through its registered agent Abel Gutierrez, Centeotl #223, Col. Industrial San Antonio CP 02760, Delegacion Azcapotzalco, Mexico DF 03100.

57. The Rotork or Remote Control Defendants provided, installed, serviced, warranted and inspected a safety or relief valve, known as a "Valvula de Corteo Rapido." The valve was defectively designed, manufactured, and/or marketed. These defendants breached their implied warranty of merchantability regarding the valve and the services

provided along with the valve. The Rotork and Remote Control defendants were negligent in their installation, setting, inspection and maintenance of the valve in question. At the time of the accident the valve was not operational and the failure of the valve was the proximate and producing cause of the increased gas supply to the explosion intensifying and magnifying the explosion and feeding the resulting fire and fireball. The Plaintiffs running for their lives who were unable to escape the fireball could possibly have survived if the valve had done its job and had the Remote Control and Rotork defendants not been negligent in their technical and operational services.

58.     Rotork Houston, is a division of Rotork Control, Inc. that is responsible for providing service, technical advice, Rotork products, repair, maintenance, and retrofitting to the oil and gas industry. The Houston location provides regional sales, customer service, engineering, site services and technical support for ALL Rotork product lines serving all industries. They have a full service Valve Automation shop, actuators, and spare parts in stock. Rotork provided site services, field service, predictive & preventive maintenance programs. Rotork certified actuator overhauls and repairs retrofit solutions, system integration and support and customer solutions. Rotork Control, Inc. and Rotork LTD UK designed, manufactured and marketed the valve identified as the Rotork, "Valvula Corte de Rapido." Such valve is installed and serviced, and technical support is provided by Rotork Control, Inc. or Remoter Control, Inc. along with the Mexican subsidiary, Rotork Servo Controles de Mexico Sa deCV. Technical support is supplied along with maintenance and repair services out of the Houston Rotork office either through Rotork Control, Inc. or Rotork Houston a division of Rotork Control, Inc,, Remote Control, Inc., or Rotork UK LTD. Rotork Servo Controles de Mexico Sa de CV

is believed to have been involved in the sale, technical support and language based support for the Houston Rotork office. Rotork, out of its Houston, Texas, office provided the installation, technical service and repair and maintenance for the valve. The failure of the valve and negligence of the technical personnel in failing to properly; install, service or maintain the valve was a proximate and producing cause of Plaintiff's damages. Rotork also breached its implied warranty of merchantability in the sales and service of the valve so that the four year statute of limitations applies to these claims.

59.     Defendant Kinder Morgan Gas Natural de Mexico is a subsidiary or related entity of Kinder Morgan, Inc. Said defendant may be served by serving Kinder Morgan, Inc. through its registered agent CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

60.     Defendant Kinder Morgan, Inc. is a foreign for-profit corporation with its principal place of business in Houston, Harris County, Texas. Said defendant may be served by serving its registered agent CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

61.     Defendant Kinder Morgan Energy Partners L.P., is a foreign for-profit corporation with its principal place of business in Houston, Harris County, Texas. Said defendant may be served by serving its registered agent CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

62.     Defendant Kinder Morgan Management LLC is a subsidiary or related entity of Kinder Morgan, Inc. Said defendant may be served by serving Kinder Morgan, Inc. through its registered agent CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

63.     Defendant El Paso Pipeline Partners, L.P. is a foreign limited partnership with its principal place of business in Houston, Harris County, Texas. Said defendant can be served by serving its registered agent, CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

64.     Defendants El Paso Pipeline GP Company, LLC is a general partner of Defendants El Paso Pipeline Partners L.P. with its principal place of business in Houston, Harris County, Texas. Said defendant may be served by serving its registered agent CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

65.     Defendant Tennessee Pipeline Inc. is a subsidiary or related entity of Kinder Morgan, Inc. Said defendant may be served by serving Kinder Morgan, Inc. through its registered agent CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

66.     Defendant Tennessee Pipeline Partners, Inc. is a subsidiary or related entity of Kinder Morgan, Inc. Said defendant may be served by serving Kinder Morgan, Inc. through its registered agent CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

67.     The Defendants listed in paragraphs 59-66, (the "pipeline" defendants), are commercially involved in the purchase, sale and transportation of LNG and "natural" gas through pipelines they own and operate in the State of Texas and elsewhere into Mexico. Upon information and belief, the pipeline Defendants will contend that ownership of the gas products is transferred at the border between Texas and Mexico. Plaintiffs would show that the ownership of the gas cannot be "constructively" transferred until the gas is actually metered and the volume of gas processed through the pipeline is accounted for.

Without this there is only a "phantom" ownership transfer. The pipeline defendants have a duty under the Texas Railroad Commission rules and regulations for the transportation of hazardous material such as the product involved in this case to ensure that the gas is transferred to an "authorized" and permitted facility that meets all the rules, regulations and industry standards for accepting such products. The same rules, regulations and standards apply to gas that is transferred through interstate commerce regulated by the Department of Transportation and formerly ICC. The pipeline defendants had a duty to only sell or transfer gas to accredited and safe facilities for processing. These defendants cannot absolve themselves of this duty by creating a phantom ownership transfer to avoid their legal responsibilities. Accordingly, the pipeline Defendants had a duty to insure that the gas transported, purchased and sold within the State of Texas and involved in this explosion and accident where over forty (40) people were killed and numerous more seriously injured had the duty to inspect the facilities where they sold the product and to only transfer gas, natural gas and LNG to a facility with the standards, operating equipment, engineering and ability to safely handle the product. The pipeline defendants failed miserably in this duty and their negligence in failing to follow regulations, industry standards and to properly inspect the facilities is no different than the major fertilizer defendants failure to inspect the facilities they delivered product to in the "West," Texas explosion. The pipeline defendants are guilty of negligence and gross negligence and that negligence and gross negligence was a proximate cause of Plaintiffs damages.

68.     Defendant Emerson Electric Company is domestic for Profit Corporation with its principle place of business in St. Louis, MO. Said Defendant may be served by serving its registered agent, Frank L. Steeves, 8000 West Florissant Avenue, St. Louis, MO 63136.

69.     Defendant Emerson is responsible for the design, marketing and manufacture of the Delta "V" operating system which they advertise and market as an upgrade on the Honeywell Analytical Total Plant operating system. Emerson claims that the Delta V system is designed to "integrate" with the existing Honeywell system to upgrade the plant's operating and metering system to a digital system. Emerson breached its implied warranty of merchantability with the sale and service of the system. The Delta V system was never fully operational, never fully integrated with the Honeywell system and failed to alert or properly monitor the defects in the piping, driers, metering and valves. The system totally failed to provide the type of operational information necessary for the safe operation of the plant. Emerson breached its duties to the plant owner and to the plaintiffs in failing to provide a system that was reasonably fit for its intended use, failing to properly; install, service and repair the system and failing to provide technical support for the equipment as needed all of which were required in its warranty of fitness for its intended use. Emerson was well aware of the reasons for digitizing the plant and upgrading the Honeywell system which itself had never worked as intended. In the alternative, should it become known that Emerson Electric provided the original plant operation system and then provided updated sales and service of the Delta "V" equipment to the plant to upgrade their own equipment the same allegations apply with the exception the updated equipment was meant to upgrade Emerson Electric equipment.

70.     The PeMex operation defendants were negligent and grossly negligent in their operation of the plant and its systems including the valves, operational systems and metering stations and the metering of the gas itself. The PeMex operation defendants were further negligent and grossly negligent in their failures in repairing, inspection,

monitoring and detecting the equipment failures, including the drier and separator, the diversion of condensate and water that is believed to have corroded the pipe and weakened it to the point of causing the explosion, and in failing to ensure that the relief or safety valve was properly set installed, maintained, repaired, and that all of the gas was properly metered upon entering the plant and upon sale when exiting the plant, that no gas was diverted or "converted" as a result of manipulation of the paper charts, graphs or employees involved in that process or the manipulation of digital data once the plant was converted to a digital measuring system or whenever that system was installed. The PeMex defendants had control and were in charge of the engineering of the plant including the use of elbows instead of "T's" at the metering point, making sure the metering was not the source of corrosion or weakening of the pipe, making sure proper safety measures were in place including proper monitoring of gas, pressure and properly measuring the gas, water and condensate running through the plant. The PeMex defendants were ultimately responsible for ensuring that the plant did not explode, that the gas did not catch on fire and that contractor and PeMex personnel were not injured or killed. PeMex was negligent and grossly negligent in all these actions and their negligence and gross negligence was the proximate cause of plaintiffs' damages.

### III. VENUE AND JURISDICTION

71.     This Court has jurisdiction over the lawsuit because of the amount in controversy exceeds the Court's minimum jurisdictional limits. Defendants removed this cause of action under the laws and constitution of the United States of America/and or the "diversity" jurisdiction of this court pleading a Federal question or that the case arose under or involved the laws and statutes of the United States, including the Foreign

Sovereign Immunities Act, so as to convey jurisdiction upon this Court. Plaintiffs have denied that any defendant is subject to protection from suit under the doctrine of "sovereign immunity," having shown that the Federal sovereign immunity statute does not provide the protection claimed to the named parties. Plaintiffs do not dispute that the court has original jurisdiction or diversity jurisdiction or Federal Question Jurisdiction. Plaintiff's would show that whether any Defendant is entitled to "Sovereign Immunity" raises a Federal question that conveys jurisdiction upon this court even if there is a lack of immunity and that the Court has Federal Question jurisdiction under the Federal Civil rights Act, 18 U. S. C. 1985. Accordingly, Plaintiffs have withdrawn their Motion to Remand. This court has original jurisdiction of this case based on Federal question and the issues properly removed to Federal court. Lastly, this court has jurisdiction over the parties and subject matter of this case under the "Erie" Doctrine.

72.     This Court has subject matter jurisdiction over the parties because Defendants are residents of the State of Texas and/or regularly conduct business in the state of Texas. The Defendants' actions and activities in the State of Texas is of such a continued and regular nature as to convey "general jurisdiction" over them. The 'subject matter' of the suit is subject to the jurisdiction of this court. The activities of the Texas defendants have a direct and proximate relationship between their Texas activities and the explosion made the basis of this suit. The safety, monitoring, installation, engineering and transportation actions of various defendants who were either Texas residents, occurred in Texas or were connected to Texas or involved the travelling of Texas residents from Texas to perform the services, which were solicited, invoiced, paid for and contracted for in the State of Texas.

73.     Venue is proper in the Southern District of Texas, Houston Division, because this case was removed from the state District Courts of Harris County, Texas, and because a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas. Defendants FireBus, Inc., and P. M. I. North America, Inc., have their principle place of business in this County. Venue was proper under the case filed in state court and as such under the court's removal jurisdiction it is proper in this District court and in the Houston Division.

## FEDERAL QUESTION JURISDICTION

74.     The Plaintiffs plead jurisdiction under the laws and statutes of the United States of America enabling this Court to maintain jurisdiction over this cause of action.

75.     Specifically Plaintiffs contend that 42 U. S. C. 1985(2) which forbids conspiracies for the purpose of preventing a party from asserting their rights in the Federal Courts of these United States of America provides jurisdiction over this matter and these defendants.

76.     Specifically, 42 U. S. C. 1985(2) provides for a claim for damages against any person who "Conspires to deter by force, intimidation or threat, any party or witness in any court of the United States from attending such Court, or from testifying to any matter pertaining therein, freely, fully and truthfully, or to injure such party or witness in his person or property on account of his having attended or testified."

77.     The PeMex Defendants, specifically, upon information and belief, persons operating in conspiracy with and on behalf of Defendants PeMex, PeMex Exploration and Production, Inc., PeMex Gas and Basic Petrochemistry, PeMex  Petrochemistry and PeMex Refining, along with employees of or persons acting on behalf of, Defendants P.

M. I. Comercial Internacional S. A. de C. V., P. M. I. Norteamerica, S. A. de C. V.,and P. M. I. Holdings North America, Inc., did engage in and act upon a conspiracy to threaten Plaintiffs with bodily harm and property damage if they proceeded with their claims in this Federal Court of these United States of America, or if they proceeded with their attempts to obtain justice for the deaths and injuries that occurred as a result of the explosion and fire at the gas processing plant owned, operated and maintained by the various PeMex defendants or managed and engineered by the various PeMex defendants as more specifically laid out in this complaint. The said individuals, acting in concert and in conspiracy, did act to prevent the Plaintiffs from testifying in this case, and in proceeding with this case in order to protect their rights under the laws and statutes of the United States of America.

78.     The conspiracy consisted of threats to Plaintiffs if they should proceed in this litigation and threats to their financial and economic livelihood should they not dismiss their cases. The threats were made by individuals who were connected with, or in the employment of or under the direction of the PeMex Defendants and the P.M.I. Defendants, and they occurred after the case was removed to this United States District Court, and they were made with the intent to prevent parties and witnesses from accessing, and testifying in this cause of action.

79.     If litigants are unable to assert their rights in the courts of the United States because of threats of monetary harm then our system of justice has failed. Plaintiffs hereby file suit under these civil rights and civil conspiracy statutes invoking the Court's Federal Question jurisdiction.

80.     The United States District Court for the Southern District of Texas, Houston

Division and the State of Texas have jurisdiction over the events giving rise to this

explosion and Defendants because both "General Jurisdiction" AND "Specific

Jurisdiction" exists over the Defendants and through the Long Arm Jurisdiction of the

State of Texas and this Court. The various PeMex Defendants are incorporated in the

United States, the Cayman Islands, or the United Mexican States. The principle place of

business of at least three of the PeMex defendants is the State of Texas. The main trading

arm of PeMex including the company that likely purchased and transported the gas made

the basis of this suit either owned or its subsidiary owned the Shell Oil Company Deer

Park Refinery, located in Deer Park, Texas.  The Commercial director of PeMex and the

main trading arm of PeMex is also an employee of a PeMex company headquartered in

Houston, Texas. She was also involved, while employed by the main commercial arm of

PeMex, in the negotiations leading to the 50% joint venture at the Deer Park Refinery

between PeMex and Shell. Shell Oil Company is incorporated and has its principle place

of business outside the United States, but even though Shell is known as Royal Dutch

Shell it has never claimed either sovereign immunity or that the Courts of Texas lack

jurisdiction over the various Shell entities doing business in Texas. PeMex and its various

subsidiaries regularly, systematically and continuously conduct business in the State of

Texas.  The pipelines involved in the transportation of the hazardous gas that ignited the

explosion in question were loaded and transported through the State of Texas. The rules,

regulations and statutes that apply to the transportation of this material applied while

within the State of Texas and continued to apply to the metering point within the Country of Mexico. The contracts, decisions and residents affected by the explosions and hazards live in the State of Texas. Further, the explosion which resulted from the acts and omissions of the pipeline Defendants occurred or resulted in whole or in part in damage in Hidalgo County, in the State of Texas. The dangers of use of the gas sent from Texas into Mexico without the safety procedures and protections necessary for their safe transportation and use occurred partially along the pipeline route passing through Hidalgo County within the State of Texas and the duties and obligations of these Defendants did not cease at the border but continued to the "actual" point of delivery, the metering facility within Mexico. Various Defendants have claimed that ownership of the "LNG or natural gas was transferred at the border, but no metering facility exists at the border or in the middle of the Rio Grande River. Instead, any "actual" transfer of ownership can only occur when an actual accounting of the quantity of gas transferred occurs despite the legal fiction of ownership transferring at the border. Until an accounting occurs it is only an "illusory" ownership interests that has transferred. No payment would occur based on the illusion. Both Federal and State laws applicable to the transportation of hazardous material and to the pipeline carrying the gas are applicable to Defendants' conduct in Hidalgo County, and throughout the pipeline route through the State of Texas. The explosion and the gas released by the explosion directly impacted the citizens of Hidalgo County, Texas, especially those who live or work in close proximity to the border. Glass was shattered, windows were broken, and gas escaped and endangered residents of Hidalgo County, Texas. The State of Texas has direct contacts with this incident and the health and safety hazards posed to its citizens are direct consequences of Defendants'

actions. The explosion was within the vicinity of Hidalgo County so as to cause damage to property and exposure to citizens of the county during and after the event. The principles of Due Process are not offended by the exercise of personal jurisdiction over entities residing, or doing business along the border that affect the enjoyment of life within the State of Texas and where the events giving rise to the explosion had such direct contact with the State of Texas. Defendants Remote Control and its affiliate or parent company Rotork have a plant in Texas, P. M. I. Holdings North America, Inc. has its principle place of business in Harris County, Texas. PeMex has availed itself of the courts of the State of Texas on numerous occasions, not the latest of which involved millions of dollars of claims in the B.A.S.F. litigation filed in Federal Court in Houston, Harris County, Texas. PeMex Exploration & Production, Inc., and/or its affiliated or subsidiaries have a fifty percent ownership interest in the Shell Oil Co., Deer Park refinery, located in Harris County, Texas. P. M. I. Holdings, Inc. is listed in SEC filings as the owner/purchaser of the gas involved in the pipeline explosion. According to their SEC filings, they are the owners of the gas sold by PeMex Exploration & Production, Inc., including the gas refined at the Shell facility in Deer Park, Texas. P. M. I. Holdings, Inc.,  and/or P. M. I. Comercio National S. A. de C.V. which shares employees with P. M. I. Holdings North America, Inc. with a principle place of business in Houston, Texas, transports, through various agreements, the gas it purchases in Texas for sale within Mexico. The gas is transported by pipeline across the border through the plant that is the basis of this suit, and then the gas is repurchased at a metering point beyond the point where the failed equipment, potential graft and corruption and diverting of gas occurred without safety procedures or repairs or maintenance. The operations are intertwined with

the operations of P. M. I. Holdings North America, Inc. and PeMex Exploration & Production, Inc., and PeMex Gas and Basic Petrochemistry. The various PeMex entites exchange employees and engineers both in the United States and the State of Texas and in Mexico. In addition to the above, there are numerous other transactions involving the PeMex defendants and the State of Texas, not the least of which is making use of the United States District Courts for the Southern District of Texas, Houston Division in order to file suit against multiple defendants operating within the State of Texas and alleging that gas, oil and other petroleum products were diverted, purchased illegally or stolen from plaintiffs and the defendants then were involved in the purchase of the products within Texas. PeMex Production & Exploration, Inc., benefits both financially and from a training and technology standpoint from its ownership interests in the Deer Park refinery. Upon information and belief, PeMex sends various employees to the Deer Park facility for training, observation and then returns these employees to Mexico to run various parts of their operations. The commercial operations, real estate, financing, ownership and use of the State of Texas are continuous, regular and systematic. As such, the State has obtained "General Jurisdiction" over the PeMex defendants so that no traditional notions of due process would be violated by exercising jurisdiction in this case. The allegations of commercial and specific actions within the State of Texas and in this Complaint against the Defendants involving the engineering, services, repair, maintenance and safety services, transportation and delivery of the gas to the facility and failures in regard to these activities are directly related to the proximate cause of the explosion provide specific jurisdiction over the controversy and defendants. Plaintiffs would show that discovery on these issues will prove that the allegations in this

Complaint and more support their jurisdictional claims and support the exercise of jurisdiction in this case.

In addition to the jurisdictional components, the 2014 PeMex law establishes that PeMex and its subsidiaries are subject to both "Commercial" and "civil" law, taking away both the sovereign immunity and jurisdictional arguments.

81.    The Defendants Draeger, I & C and Firebus are citizens of the State of Texas. They along with Honeywell analytical were involved in the pre-explosion Technical Committee that PeMex put together to advise as to how to prevent such an event. The failure of these defendants and their negligence as committee members was a direct and proximate cause of the explosion. Further, the detection and monitoring failures was a violation of engineering standards and should have been detected by the engineers of P.M.I. Holdings North America, Inc., especially those who rotated through or trained at the Deer Park refinery. Defendants have had systematic dealings in, through and with the State of Texas all of which were connected to the explosion and contributed to the cause of its occurrence.

82.    The PeMex Defendants have submitted to the jurisdiction of this Court by invoking removal jurisdiction, by engaging in 'civil rights' violations under 18 U. S. C. A. 1985 and by their continuous activities in the forum.

83.    The Rotork Defendant's activities enable this Court to obtain "specific" jurisdiction over their design, sale, manufacture and marketing of the valves involved in the explosion and fire, along with their inspection, maintenance, repair or installation of the valve, technical advice and site services out of the State of Texas and continued involvement with the plant and its ongoing enterprises.

84.    The "pipeline" Defendants have engaged in continuous activities involving the transportation of hazardous materials within the State of Texas, and the specific gas that exploded injuring Plaintiffs and their failure to follow industry standards and regulations both within the State of Texas and at the metering station and plant was a direct cause of the injuries and allows the Court to exercise "specific" jurisdiction.

## IV. FACTS

85.    On or about September 18, 2012 while in the course and scope of their employment, Plaintiffs were working at a refinery located in Reynosa, Mexico owned, operated and/or controlled by Defendant Pemex and/or it's subsidiary PeMex Exploration & Production, Inc., PeMex-Gas and Basic Petrochemisty, or another PeMex subsidiary or alter ego, alone or in conjunction with other PeMex subsidiaries, when suddenly and without warning a violent and devastating explosion occurred. Plaintiffs JUAN JOSE VAZQUEZ TREVINO, VICTOR MANUEL GOMEZ VARGAS, DAMARIS GUERRA GARRIDO DE MARTINEZ, OMAR ARELLANO ROCHA, ANGEL CARLOS MARIE MORALES, ANGEL RAFAEL MARIE VELASQUEZ, FELIPE JESUS MORALES PEREZ, VICTOR CHAVEZ MARQUEZ, VICTOR PEREZ TOMAS, FRANCISCO JAVIER HERNANDEZ MARTINEZ, HILARIO GUTIERREZ QUIRINO, JAIME CRUZ HERNANDEZ, JOSE ROBERTO ORTIZ MARQUEZ, JESUS PLIEGO LANDA, RICARDO DE JESUS MERCADO RODRIGUEZ, LUIS CARLOS MUNOZ MARTINEZ, ULISES RIOS MORENO, ROSARIO GERONIMO DIAZ, BRUNO ULISES AVENDANO ROJAS, ULISES RIOS PECINA, JOSE LUIS ZAMORA, AND IGNACIO CEDILLO AGUILAR were working at the refinery and suffered fatal injuries due to the incident. Plaintiffs JAVIER ALVAREZ DEL CASTILLO, CARLOS

ALBERTO GUZMAN HUESCA, JOSE LUIS HERNANDEZ HERNANDEZ, HERMINIO MARTINEZ OSORIO, MIGUEL SANCHEZ CRUZ, ARELITO MARTINEZ MORELOS, LUIS JAVIER MENDIOLA CHAVEZ, ARON GARCIA FLORES, JOSE LUIS MARTINEZ NOLASCO, JUAN RAMON MUNOZ MEZA, JAVIER MARTINEZ DEL ANGEL, ARCENIO SANCHEZ LUCIANO, JESUS GUADALUPE CAMARILLO VALDEZ, MARCO ANTONIO DUARTE MEDELLIN, CARLOS ALBERTO MARTINEZ were working at the facility and received serious, life threatening and disabling injuries.

86.    Upon information and belief Defendants Draeger, FireBus, I&C and Honeywell (hereinafter "Monitoring Defendants") provided technical advice to PeMex and its subsidiaries, to prevent gas explosions and fires, and detectors or monitoring equipment to determine the amount of explosive gas, smoke, fire and temperature at said plant. Said Monitoring Defendants were also responsible for the upkeep of their detectors and were providing contract work to maintain their monitoring devices at the time of the blast. Said Monitoring Defendants were negligent in that their detectors did not alert Pemex and the Plaintiffs of the dangerous conditions that lead to the explosion. Further said Monitoring Defendants conducted their subcontracting duties in a negligent manner, to wit, the explosion that occurred on September 18, 2012 and the conditions that led to the explosion were not discovered, reported or repaired prior to the explosion. The "safety" Defendants totally failed in their duties and their negligence led to the deaths and injuries suffered by plaintiffs. The defendants responsible for monitoring and the "System Defendants" were negligent in failing to discover the diversion of gas, water and condensate and the fact there were changes in the amounts of product being metered. If

the System and Monitoring Defendants had not been negligent they would have discovered the parts which had failed, the damage that the interior walls of the piping was experiencing and necessary repairs could have been made prior to the catastrophic event. Further the Pemex defendants were negligent in the operation of their facility in allowing gas to leak undetected leading to the explosion. Despite the allegations against the service personnel and equipment manufacturers and maintenance personnel, the duty to maintain and operate a safe plant remained with PeMex. PeMex was told of various leaks within the system and the problems certain aspects of the system were experiencing. Without the report herein referenced the extent of this knowledge is unknown but it is unquestioned that it was PeMex's duty and obligation to run the plant safely, to avoid explosions of the type that occurred and that PeMex and the various PeMex entities were negligent for allowing the deterioration of plant equipment, the undiscovered defects within the system and the ultimate escape of gas leading to the deaths and injuries. In addition to monitoring and detection, these Defendants were involved in the safety program for the plant as outlined in the initial report issued by PeMex following the explosion. The initial report is not a detailed report examining the casual factors involved in the explosion (which upon information and belief is not to be released for over twenty years) but is a compilation of the information available to the various safety contractors and equipment vendors who were responsible along with PeMex of the safe operation of the plant. Plaintiffs will request that the court require production of the "actual" report analyzing the causes and conditions that led to the explosion, fire and death, burn and injury of so many workers.

87.     Plaintiffs would show upon information and belief that Defendants Emerson Electric Company and its Delta V component parts were responsible for providing system monitoring, overall plant system safety coordination and the digital upgraded operating system for the Pemex, or Pemex Exploration and Production, Inc.'s plant outside of Reynosa, Mexico. The system provided by Defendants was supposed to integrate and coordinate with the "Total Plant Solutions" © systems originally designed, manufactured and installed by Honeywell Analytics, Inc. Neither the Honeywell System nor the system manufactured by Emerson, the Delta V digital system on the occasion in question was "fully integrated." As a result, the Honeywell "TPS" system and all or part of the complete plant safety, monitoring and detection, and operating systems failed or were not functioning properly at the time of the accident. Neither system worked as designed, warranted and manufactured.  Each system failed in violation of the U. C. C. implied warranty. Both Honeywell Analytical and Emerson provided implied warranties of merchantability under the U. C. C. and a warranty that their systems were reliable units and systems capable of monitoring or detecting pressure, overpressure, leaks, failures or escapes of gas or the diversion of gas or water within the plant. The system's failed to properly shut-down when they detected failures in the plant operations or in fact when the piping collapsed and the explosion occurred.

88.     The foregoing system integration and operational failures created an unsafe condition that combined with the failure of Pemex plant management, PeMex and PeMex Exploration and Production, Inc.'s design and engineering failures, including the failure to adequately monitor the systems that "were" operational, failure to discover the various defective systems and equipment that caused or contributed to the plant explosion, failure

to discover the defective separator, diverted gas, and "pressurized water", to create an unreasonably dangerous operating situation at the plant which was an accident waiting to happen. A "separator" or like piece of equipment failed resulting in water under high pressure not being diverted into storage tanks set up to store the water but instead the 'separator' or like equipment acted as a "choke" and became a "high-pressure" hose or "blaster" targeting an elbow joint, or another unknown pipe in the plants piping system on the meter run to the sales point at the transfer point for the gas and separation point for the water and condensate. Gas that was supposed to be metered beyond the elbow was diverted from the system and eventually escaped causing the explosion. The metering, gauges, monitoring and safety equipment along with the other plant equipment that failed were not detected by either the Honeywell Total Plant Solutions system or by the newly installed Emerson and Delta V equipment. Upon information and belief, both the Rotork and/or Remote Controls valve that failed and the "separator" that was defective were reported to plant management repeatedly prior to the explosion. For some unknown reason, needed repairs and maintenance were never ordered or performed by PeMex.

89.     At some point prior to the explosion, gas and water that had constantly been in the metering runs and pipeline since the plant's inception were missed or lost by the system. After the failures occurred, the elbow or piping was being sprayed by essentially a high pressure blaster that over time disintegrated the pipe wall and caused the failure resulting in the explosion. These failures occurred in conjunction with the failure of a Rotork or Remote Control valve which did not operate to close off the flow of gas which fed the explosion and fire.

90.     The failures of the various PeMex Defendants, specifically the alleged plant owner Defendant PeMex Exploration and Production, Inc. to test, inspect, monitor, maintain or replace defective equipment or monitor a system where there was explosive gas under pressure resulted in the deaths of over 40 people and seriously injured many others, including various Plaintiffs with serious burn injuries. The pipeline that carried the gas originates between Houston and Victoria, Texas and is filled with explosive gas carried under rigorous guidelines established by the Texas Railroad Commission. The rules and regulations of the TRRC govern the transportation of hazardous materials by pipeline. They apply to pipeline operators from the point of pickup to the delivery point. The pipeline operators have transported the gas and other hazardous materials under an agreement with PeMex and its subsidiaries all of which maintain offices in the State of Texas, conduct business in the State of Texas and own property in the State of Texas. The business which serves as the basis of this suit, the production, transportation, marketing, refining and selling of gas owned by the PeMex Defendants, including Defendant PeMex, and/or Defendant PeMex Exploration and Production, Inc., and/or Defendant PeMex Holdings, Inc. or Defendant P. M. I. Holdings North America, Inc., or Defendant PeMex Procurement Inc. is the exact business that the various PeMex Defendants are engaged in at the Shell Deer Park refinery, where they are 50% joint venture partners with one of the Shell Oil companies. Defendants own a 50% interest in the Shell Oil refinery in Deer Park, Texas. The Shell Deer Park Refinery is one of the largest refineries in Texas and this indicates that there are systematic, continuous and general actions of Defendants that allows for general jurisdiction over the intertwined PeMex Defendants who have constantly and continuously conducted business in the State of Texas.

91.     The PeMex Defendants, specifically, one company located in Mexico which negotiated and purchased PeMex's 50% interest in the Deer Park Refinery through mutual employees of the Mexican and Texas companies. P. M. I. Norteamerica S. A. de C. V., a Mexican company with offices at the PeMex headquarters in Mexico City, "officially" owns the Deer Park Refinery in partnership or conjunction with Shell Oil Company or Shell U. S. A., or another of the various Shell Oil companies where they refine, produce, market and sell various petroleum products including natural gas. The Mexican PeMex companies continually do business in the State of Texas, own property in the State, engage in commercial operations in the State and have submitted themselves to the general jurisdiction of the State of Texas.

92.     Defendant PeMex Procurement International, formerly Integrated Trade Systems, manages the transportation of gas and provides comprehensive management services for the supply chain of imported goods and services to the PeMex group and customers worldwide from offices in Houston, Texas. The gas purchased, transported and sold by this Defendant is the subject of this suit. The offices are located at 10344 Sam Houston Parkway, Houston, Harris County, Texas. PeMex Procurement International, the commercial trading arm of PeMex, is headquartered and conducts trading of oil, gas, LNG, and other hydrocarbons from their principle place of business in Houston, Texas. PeMex Procurement is a Texas corporation. PeMex Procurement conducts trading in hydrocarbons, including LNG such as those made the basis of this suit, from Houston, Texas. Upon information and belief, PeMex Procurement International was the original PeMex purchaser of the gas that exploded at the processing plant outside Reynosa, Mexico.

93.     The plant owner/operator Defendants are responsible for the installation of

permanent gas detection and monitoring equipment which was either not done or

negligently done. The negligence of the PeMex Defendants in failing to have permanent

gas detection and monitoring systems is a proximate cause of Plaintiffs damages. A

responsible plant operator/owner would have operated the plant in accordance with

industry standards and regulations. The plant owners failed miserably in this duty. The

plant owners knew or should have known that there was no permanent gas detection

system installed at the plant, including no pipeline monitoring system to monitor the

pressures and flow of the gas through the pipeline or any such system had failed and was

not operating properly. The plant owner defendants are guilty of gross negligence and

should be held liable for punitive damages.

94.     The PeMex Defendants are now subject to "commercial" and "civil" law as of

August 11, 2014, due to a change in the "PEMEX" law. All disputes are now subject to

'civil' and "commercial" law. PeMex is unable, under the current version of the

"PEMEX" law, to claim the defense of sovereign immunity as it is now subject to all

civil and commercial jurisdictions and laws.

95.     The purchase, transfer, sale, manufacture, refining of oil and natural gas are not

normal activities for the "sovereign" or "king". In this case, the current PeMex

Defendants and it is believed the rest of the PeMex Defendants have or will allege they

are immune from suit based on sovereign immunity. Under both the definition of

sovereign immunity contained in the Federal statutes and the traditional definition of

commercial activity, the exploration, refining, transporting, marketing and selling of

petrochemicals, including oil and gas is not an activity of the "King" and the "NO"

PeMex company meets the definition contained in the Federal Statutes governing what entity is subject to sovereign immunity. Plaintiffs have filed their response to the "Sovereign Immunity" Motion and are confident they are correct on the law and facts.

96.     The various PeMex Defendants use the Shell Deer Park Refinery for employee training, requiring employees and management to travel to Texas and to work in the refinery alongside Shell employees in order to obtain working knowledge of how they operate the plant. PeMex management is trained at the refinery. The PeMex entities make a profit by selling products refined at the Deer Park refinery. The refinery is part of the continuous operations of PeMex inside the State of Texas and within the United States. The refinery in the State of Texas has become an integral part of the PeMex business model and is so regularly, systematically and continuously used by PeMex, along with their other offices and business transactions in Texas, that it conveys general jurisdiction over the companies. Discovery of the specifics of PeMex's various business operations and the actual companies' activities is necessary in order to specifically identify the actual activity which would serve to convey general jurisdiction upon which specific company. It is known that employees of P. M. I. Holdings North America, Inc. with its principle place of business in Houston, Texas, were employees of P.M.I. Comercio Internacional S.A. de C. V., the Mexican based company that serves as a part of the "commercial" nerve center of PeMex, and were involved in the negotiations and purchase of the 50% stake in the Shell Deer Park Refinery. It is known that P. M. I. Holdings North America Inc. and PeMex Procurement International maintain offices in Houston, Texas from which they oversee the various transactions which regularly occur within Texas. This includes the supplying of engineering services to the Deer Park Refinery and

to various different PeMex entities and the purchase, transfer, storage and sale of oil, liquefied natural gas, natural gas, and other hydrocarbons transferred by pipeline. Obviously, gas which caused the explosion and was directly involved in the accident was purchased in Texas and transported to the plant while owned in part by one or more PeMex entities.

97.    Upon information and belief it is contended that the following negligent and/or grossly negligent acts occurred that are breaches of the duty owed to Plaintiffs by one or more of the PeMex entities, more specifically listed in the proceeding paragraphs, which were the proximate or producing cause of Plaintiff's injuries and damages.

a)    *Failure to ensure the gas was transported in a safe manner*. It is believed that part of the integration problem from the original plant system to the 'digital" Emerson system was that the original system used "Paper" graphs and charts which were required to be manually spun or read to account for the gas bought or sold within the pipeline at the metering station. The original paper charts and graphs allowed for ease in the diversion of gas that was transferred but not accounted for by PeMex and "converted" or stolen by unknown persons or companies. The ease with which the gas could be stolen during the use of the paper graphs and charts resulted in the digital system never becoming fully operational. It is unknown without discovery exactly how the metering system was used for the diversion of gas, but it is undeniable that PeMex encountered problems with gas and hydrocarbons from this plant and other facilities being stolen and sold across the border in Texas to numerous other companies. (See the BASF litigation). It is believed that the Emerson Delta "V" system never became fully operational because of resistance from PeMex employees or contractors who personally

benefitted from the use of the prior system. The PeMex Defendants were negligent through their systematic failure to ensure that the plant was operated in a professional, safe and prudent manner as would be done by a reasonable engineer, plant manager, safety manager, and maintenance manager.

b) *Failure to follow rules and regulations for the safe transfer, transportation and storage of natural gas or LNG established by the T. R. R. C. or the Department of Transportation and API.*

c) *Failure to implement the proper design for the piping of the plant, metering of the plant and the metering runs and separation of gas, condensate and water.* The plant was allegedly designed with an 'elbow' in close proximity to the separator or 'drier' system. Standard industry practice requires the installation of a "T" at this intersection and the insertion of a 'floating' plug that allows for the creation of a gas pocket preventing the type situation that caused the pipe deterioration and corrosion that occurred in this case leading to the explosion. The PeMex Defendants were negligent in their failure to follow safe engineering standards in the design, operation and maintenance of the plant resulting in the explosion, fire, injuries and deaths of Plaintiffs.

d) *Failure to adequately inspect and monitor the metering stations, metering runs, piping and valves in the system as well as the various safety equipment that was supposed to detect pressure, overpressure and leaks or deterioration in the piping and system, including the "dryers," "separators," and valves.* The PeMex Defendants failed to properly and regularly inspect the plant and to follow safe, proper engineering standards by acting on any maintenance and inspection discoveries and take corrective actions regarding any safety issues. They were negligent in their failure to

Plaintiffs' Third Amended Complaint
Castillo et al vs. PMI Holdings, et al

implement and/or oversee the inspection process so that it is ensured that unsafe conditions are not only reported but that procedures are in place to ensure the conditions were corrected in a timely manner.

e) ***Failure to account for the gas within the system.*** It is believed that the diversion of gas within the system had been going on for some time and the failure of various PeMex plant, engineering and safety officials to implement safety measures, replace worn out or damaged equipment, monitor the condition of the piping, meters, meter runs, driers, and separators, is allegedly the result of not only the negligence and gross negligence of PeMex and its employees but resulted from the fact that unmetered gas was benefitting someone. These Defendants were negligent in their failure to ensure the accounting and meter charts and graphs were properly and accurately done so as to ensure that the plant was not running in an unsafe manner for the benefit of those converting PeMex property.

f) ***Failure to fully install or implement safety devices and procedures, including but not limited to: failure to install permanent gas detectors, both within the plant and within the piping; failure to monitor the pressure within the pipe; failure to ensure the safety valve and other valves were in proper working order, and failure to install, or to integrate monitors and detectors at the metering stations or runs, driers and separators.*** Further, the PeMex Defendants failed to implement and follow proper safety procedures for plant operations.

g) ***Failure to act upon the reported discovery that the safety valve or relief valve was not operating properly;*** failure to repair or replace the driers and separators which were causing the water or condensate to disintegrate or corrode the inside of the

piping resulting in there being a 'weak' spot where the pipe exploded; failure to adequately monitor the pressure within the pipe or to inspect and maintain the "pilots" of hydraulics which would set and control the "low" pressure and "high" pressure settings on the relief or safety valve and the "HI-LO" pressure sensors which should have activated the safety valve or relief valves and activate these valves, stopping the flow of gas feeding the explosion and fire. The valve or sensor between the pilot and valve or the hydraulic sensors, needed to be locked manually and properly inspected and maintained in order to ensure they operated properly in cases of low or high pressure. The pilot is pneumatically operated and must be properly set by maintenance personnel or PeMex inspectors. The "hydraulic" valves activate the same way, except that sensors "read" or sense, high or low pressure causing the valve to open and or shut depending upon the situation and to prevent the unattended release of gas. PeMex maintenance personnel failed to set the pilot or sensors or to properly shut the safety or relief valve. Essentially, as a result of the failure of PeMex maintenance and inspection personnel to adequately inspect and maintain the values, sensors, hydraulics, pilots or pressure sensors or to replace defective equipment, including the valves, driers, and/or separators, the accident first occurred and then was exaggerated resulting in additional Plaintiffs being killed or injured. PeMex failed to properly inspect, maintain, monitor and replace equipment, processes, the operational system and safety devices resulting in the explosion, fire and resulting injuries and deaths.

h) ***Alternatively, the relief and safety valve was defective and should have been replaced prior to the accident and explosion.*** The failure of the safety or relief

valve to properly isolate the line or piping allowed additional gas to feed the explosion and fire increasing its intensity and volume and resulting in additional deaths and injuries.

i) ***Failure of the PeMex plant personnel and management to properly ensure that the operating system for the plant was fully functional.*** The system never showed diversion of gas, over-pressure or that there were safety and relief valves that were not properly set, installed or operational. In a gas processing plant such as this, it is critical that the plant operational system function properly. PeMex failed to ensure the plant operations system was working properly, functioning as it should, and that it measured and reported pressure, over or under pressure, faulty valves, hydraulics, sensors, controls, driers, separators, and damage to piping and meters or meter runs.

j) ***The plant is NOT supposed to explode and if it explodes, the valves are supposed to shut down and prevent the initial explosion from becoming a fireball which escapes out-of-control and overtakes the workers who were running for their lives and like a sandstorm in the desert which washes over them and engulfs them in a heated fireball.*** Except, instead of engulfing the Plaintiffs in sand they were engulfed in fire that burnt and singed every inch of skin from their head to their ankles, taking every bit of hair from their head, laying the plaintiffs "skinless," like skeletons bare to the bones, with in most cases only their footwear, be it "Nike," "Converse" or work boots, attached to the only portion of their body not reduced to skeleton. Plaintiffs' feet, the part closest to the ground and below the enormous heat of the on-rushing fireball, was all that was left unburned. The men were not just killed, maimed and destroyed and it was not just their lives that were taken, but their families lives were destroyed and their wives', sons', daughters', mothers' and fathers' lives were destroyed. None of these families will

ever be the same. They cannot comprehend the destruction begot by the failures at the plant, and the greed, negligence and betrayal of those in positions of responsibility, and the despair and depression they are forced to live with every day that cannot be undone. While the PeMex employees responsible for the tragedy go on about their lives, the Plaintiffs and their families cannot return to normal, they do not have the heads of their households, their sons, their brothers, their fathers.

98.     PeMex, in conjunction with the pipeline defendants, are responsible for the transportation of the gas involved in this explosion and fire. Discovery is required to determine how the transportation of the gas played an active part in the explosion. Undoubtedly, the engineering knowledge and experience gained from the operation of the Deer Park plant was supposed to be transferred to the operation of the plant involved in the explosion. Questions of whether that transfer of information occurred, why the break-down in information occurred, why the plant exploded, why the valve failed and why a portion of the gas going through the plant was not accounted for during a period of time prior to the explosion, why the plant equipment was not repaired, maintained or serviced properly and why safe operating procedures were not in place more factually specific that currently pled must be based on discovery in the case. Any Motion to Dismiss under Rule 12(B) (6) or other procedural device is premature until such information is discovered.

99.     PeMex in its common name, PeMex, Inc., Petroleos Mexicanos, Mexican Petroleum and the other entities sued and known as PeMex served either under the Hague Convention or by serving the agent recognized by the Texas Secretary of State, is the alter ego of the other PeMex companies and the parent of each subsidiary.  PeMex supervised or controlled the operating arm of PeMex, the other entities or the other

companies involved in the suit. PeMex exercised ultimate control over the activities of each subsidiary and caused the negligence which led to this explosion and the catastrophic loss of life involved in this suit. Without the "atmosphere" of corruption, and callous disregard for human life, which has been the operating standard of PeMex since it was created, this accident would not have occurred. Should any individual act of negligence or gross negligence which directly caused this occurrence not be directly traceable to PeMex, it is without doubt that if PeMex had created a culture of safety and a culture that valued human life over profits, this accident and tragic loss of life would not have occurred. PeMex must sow what it has reaped. Without holding its hands to the fire, it and the employees by which it operates will never feel the type of heat that the injured Plaintiffs and those not present in this suit felt, most in the instances prior to their death. PeMex is directly or indirectly responsible for each act of negligence and each death or injury in this suit.

100.    PeMex Exploration and Production, Inc., is one of the PeMex subsidiaries which owned or operated the gas processing plant which exploded in the incident made the basis of this suit. This Defendant supplied the design engineers for the faulty design of the piping and the plant, purchased and oversaw the failed integration of the operating system, failed to discover and stop the conversion of gas or product which caused or contributed to the failures which caused the explosion in question. PeMex Exploration and Production or the plant owner was responsible for the engineering, inspection, maintenance and safety at the plant including the allegations contained in paragraph number 70 sub-paragraphs 1-10.

101.    PeMex-Gas and Basic Petrochemicals, Inc., (previously improperly named as Basic Petro Chemistry) is one of the PeMex subsidiaries which owned or operated the gas processing plant which exploded in the incident made the basis of this suit. PeMex-Gas supplied the design engineers responsible for the faulty design of the piping, plant and the operating system, failed to discover and stop the conversion of product leading to many of the plant failures. PeMex-Gas or the actual PeMex entity owning the plant as owner and operator was responsible for the engineering, inspection, maintenance and safety at the plant including the allegations contained in paragraph number 70 sub-paragraphs 1-10.

102.    The PeMex Defendants have, as alleged in the Federal question jurisdictional allegations, engaged in both a civil conspiracy in violation of Federal Civil rights legislation to deny the Plaintiffs access to the court by denying the Plaintiffs their monetary or property rights in violation of 18 U. S. C. section 1985.

103.    Defendant Rotork, Control, Inc. is a domestic corporation with both national and regional offices. It has an office in Allen, Texas and division offices in Dallas and Houston, Texas from which it sells valves and provides service and product information including inspection and maintenance services to customers such as PeMex.  Said office is either the source of the valve which is depicted in Exhibit "A" which is alleged to have failed, causing or contributing to the explosion, fire or contributing gas to feed the fire and causing the explosion and fire to burn hotter, longer and to have been larger than if the valve had not failed, or in conjunction with its parent or affiliated Rotork company in Mexico to have provided service or technical support for the valve.  Upon information and belief it is also alleged that repairmen and/or sales representatives from the Texas

facility serviced, maintained, inspected, sold or provided other materials and services in aid of the installation, repair, and maintenance activities provided to the PeMex Defendants at the plant. The valve was not properly installed or tested after installation to determine if it was defective or operating properly. The services provided by Rotork Control, Inc., by and through its employees were negligent in that the "hi-lo" pressure sensors were improperly set or serviced, the valve was itself defective and the inspection services were performed negligently and any defect was not discovered, or the "pilot" was not properly locked and spring closed allowing the valve to properly operate, or the Hydraulic sensors were either defective or improperly installed or serviced, any of which would result in the valves' failure to properly shut, isolate the escaping gas and was the proximate or producing cause of Plaintiffs damages and injuries.

104.    Rotork Servo Controles de Mexico S. A. de C. V. is upon information and belief a foreign corporation that is a subsidiary, affiliated or parent of Rotork, Control, Inc. which is believed to have either acted in concert with the employees from Texas, or to have taken instructions from the Texas employees with regard to the installation, repair, maintenance and service of the Rotork valves at the plant.  The services provided on the valve were performed negligently, in that the "hi-lo" pressure sensors that shut the valve were incorrectly set, or the valve itself was defective and inspection was negligently performed failing to discover the defect, or the "pilot" was not properly locked and spring closed allowing the valve to properly operate, or the hydraulic sensors were either defective or improperly installed or serviced, any of which would result in the valve's failure to properly shut when the pipe exploded and resulted in the plaintiffs' damages and injuries.

105.    Rotork Houston is a division of Rotork or assumed name of Rotork Control, Inc.,

and/or Rotork UK LTD. Rotork Houston sells valves to the oil and gas industry for use in

pipelines and plants safety. The valves include those for use with Liquefied Natural Gas.

Rotork Houston not only sells valves but installs, services and provides maintenance

services to customers in the oil and gas industry such as the gas processing plant in

Reynosa owned by the PeMex entities. Rotork Houston is believed to have sold, installed

and provided maintenance, inspection or engineering services to the plant. Rotork

Houston provides regional sales, customer service, engineering, site services and

technical support for all Rotork product lines, and serving all industries. Full service

Valve Automation Shop, actuators & spare parts are in stock. Rotork site services and

field services are provided. Predictive & preventive maintenance programs, Rotork

certified actuator overhauls and repairs, retrofit solutions, system integration support and

customer solutions are available out of the Houston office. It is believed the valve was

installed, sold, or inspected and/or sites services were provided or were provided along

with Rotork Servo out of Mexico, and that the Houston office provided maintenance,

repair or integration services to the plant and valve in question. It is believed that Rotork

Houston employees were negligent in the services provided in failing to properly test the

valve after installation to determine if it was operating properly and/or the services

provided were negligent in that the "hi-lo" pressure sensors were improperly serviced, the

valve was itself negligent and/or the inspection services were negligently performed. The

pilot was negligently installed and not properly locked or spring loaded or closed

allowing the valve to operate properly, or the hydraulic sensors failed or were defective

or improperly installed or tested or serviced, any of which would result in the valve failing to properly close and shut-off the flow of gas to the fire and explosion.

106.    By reason of the foregoing, the Rotork control valve was defective and the services provided by the Rotork defendants were performed negligently. The defect was the producing cause of Plaintiff's damages and the negligence was the proximate cause of Plaintiffs damages.

107.     Rotork UK LTD is a foreign corporation headquartered in Bath, England, United Kingdom. It is upon information and belief the parent of the other Rotork Control and Rotork Servo Defendants and along with the Texas and/or Rhode Island Defendant is responsible for the design, manufacturing and marketing of the Rotork valve involved in this lawsuit. Defendant has conducted business in the State of Texas both through its own employees and through the exercise of control over the employees of the other Rotork companies. Rotork UK LTD "may" have been the ultimate manufacturer of the failed valve but almost certainly designed the valve and placed it in the stream of commerce. Rotork UK LTD provided the installation, service, inspection, and maintenance instructions for the valve and the other Rotork companies who would have provided these services to PeMex. Discovery is necessary to determine which Rotork entity is responsible for the design, manufacturer, installation, service, marketing and maintenance of the failed valve. The information is in the possession of Defendants and not available to the general public. Defendants' Motion to Dismiss is premature until the above information is obtained and Plaintiffs are entitled to discover exactly which Defendant is responsible for the failed valve. The Rotork valve Defendants' Motions to Dismiss are

more properly Motions for Summary Judgment and are not ripe for determination until discovery on these issues is complete.

108.    Various companies have been sued under the theory that they owned and transported gas to the plant and failed in their duty to ensure the delivery was safe and that the plant and its operations were able to safely transport and handle the gas that was delivered. It is unknown at this time which El Paso, Kinder Morgan, or Tennessee Pipeline Company is the actual one responsible for these transactions.  Plaintiffs have alleged breaches of various duties under the rules and regulations of the T. R. R. C., the ICC and industry standards promulgated by API. In addition, Plaintiffs have alleged that the plant was defectively designed and lacked a proper gas detection or monitoring system and that the pipeline Defendants had the duty to ensure the plant was safe for delivery of a hazardous product such as the natural gas, prior to delivering the gas to the plant and that the Defendants had a continuing duty to ensure the plant was operating safely during the relevant time periods prior to the explosion. No operational gas detection system was in existence at the plant, the operational system was not operating properly and the gas metering system and piping leading to it had been malfunctioning for a long period of time. Gas was escaping either to atmosphere, or was being diverted away from the metering station to illegally sell, creating a unreasonably dangerous condition which proximately caused the explosion, fire and Plaintiffs' injuries. Without discovery on which pipeline Defendants performed or were responsible for what operation, it is impossible to know which Defendant is responsible for the tragedy.

109.    The Dragger, Firebus, Honeywell and I&C defendants were responsible for various forms of safety at the plant including training, installation of gas detection and

monitoring equipment and providing and training on personal fire safety equipment. There were no gas detection or monitoring systems operational or which warned of the explosion or fire. All warning and safety devices such as alarms or detectors either failed to go off or were substantially delayed to the point of being useless. The Defendants were guilty of negligence and gross negligence and should not only be held responsible for a percentage of Plaintiffs damages but for gross negligence and punitive damages should be awarded as a result of their failures. The escape of gas should have been detected as should the deterioration of the piping that led to the explosion. Inadequate training, monitoring and safety equipment and detection systems and equipment all were factors in the explosion and damages suffered by Plaintiffs.

110.    Defendants are each guilty of some form of negligence or product defect that led to this catastrophic accident in which over 40 innocent workers were killed or severally injured. Plaintiffs and Defendants both understand that without failures on the part of the Defendants no explosion would have taken place and none of the innocent Plaintiffs would have been killed or injured. Plaintiffs have pled Res Ipsa Loquitur as well as negligence per se.

111.    Plaintiffs would show unto this Honorable Court that they are entitled to procedural due process, which would include the ability to conduct discovery on the issues Defendants have raised as procedural objections to the case that are more than pleading issues but are evidentiary.

112.    In addition to the responsibility for monitoring and detection equipment, none of which sounded or warned any employee on the day of the explosion of the impending disaster, no equipment reported, detected or informed the operators of the plant condition

that led to the explosion. Upon information and belief, Plaintiffs would show that the original plant control equipment was purchased from Honeywell Analytical or through them from another Honeywell company. Honeywell was responsible for the plant integration and training and the computer control system designed and installed to run the plant and its various operations. Honeywell sold, installed, distributed or otherwise provided for commercial benefit a "Total Plant Solutions" component to the facility involved in this explosion. Honeywell warranted and represented that the TPS system and its associated monitors would allow PeMex and the PeMex entities that owned and operated the plant to "Monitor" plant conditions, operating equipment, gas, condensate and water flow through the system and all operational aspects of the plant. At no time did Honeywell ever warn any PeMex entity that the system would not provide information regarding a change in operating conditions or equipment that was defective or in need of repair. Honeywell failed to warn the PeMex entities that flow or metering of the gas and water should have been manually tested on a periodic basis in order to ensure that the equipment was functioning properly. At some point in time the TPS system became obsolete or needed upgrading. The system is not believed to have functioned properly from the outset and through improper installation, training or as a result of a product defect, never functioned as it should have and did not allow for the proper plant oversight that it was intended to provide. The TPS system was supposed to allow the plant operators to monitor the gas delivery, metering, processing and separation of gas, condensate and water, along with the metering at the sale point. During the last several years, upon information and belief the pipeline separator equipment became defective and a large quantity of gas each month was lost from the system. The gas is not believed

to have escaped but to have been somehow diverted from the metering point and was not captured in the sales figures. In addition to the diversion of the gas, the separator which is supposed to have been located close to an "elbow" on the piping close to the metering station began to operate as a high pressure 'choke' diverting water under pressure against the pipe wall instead of sending the water through the system to storage tanks for sale or disposal. The equipment failure, gas diversion and water being sprayed against the pipe walls causing deterioration of the integrity of the piping, was supposed to have been detected and relayed to plant officials. However because of corruption, graft, or failures in the reporting, repair or maintenance programs no one ever implemented any repair or replacement except an upgrade of the TPS system by adding the Emerson Electric Delta V upgrade to the Honeywell system. Obviously, neither Honeywell nor Emerson personnel ever reported that the integration which was supposed to have occurred never worked properly and never alerted plant operators of the failures within the system.

113.    Emerson employees were present and involved in the sale, installation, service and repair of their system. Said system was intended and warranted to digitally upgrade the Honeywell TPS system. Emerson advertises and advises that its system is compatible with the Honeywell TPS system or other Honeywell systems and that it is fit for its intended use and purpose. Upon information and belief it is believed that the Emerson system was originally installed sometime after July 2011 and it has been serviced, maintained or repaired with the assistance of Emerson and Honeywell employees during this time period.  Additionally, it is believed the Honeywell system was serviced during this same time frame and that both companies are guilty of breaches of the implied

warranty of merchantability which would result from the sale, service, and warranty of the sales and service of their equipment.

114.     At no time did the various the safety equipment and process of Defendants, Draeger, Firebus, Honeywell, IC or Emerson provide any warning of the release, eminent release or dangers of the release of explosive gas, nor did they warn the plant of the system failures being experienced by the various monitoring and detection equipment or the metering, separators or process equipment or monitors that would have warned of the system failures, pipe deterioration or the escape and explosion that followed. There was a complete system and process failure as to the contractors inside the plant and their equipment and jobs.

115.     The system monitoring and process defendants, Honeywell, Emerson, Drager, Firebus and PeMex failed to ensure the systems were in good and workmanlike order, that no defect was resulting in an explosive condition, that the gas was being properly monitored and metered and that the plant was operating as designed. Sometime over the last few years there were equipment failures or sabotage resulting in gas not being metered that was sold from the plant, or at least that did not escape into the atmosphere and there were known and unknown equipment failures that were not repaired. These systemic failures were not of the safety programs, inspections or reports prepared by either the contractor or plant personnel. These failures were proximate and producing causes of the explosion, fire, injuries and deaths.

116.     The named Defendants, specifically, the PeMex entity that owned and operated the plant as previously alleged and will be more specifically named upon discovery, Draeger, Firebus, I & C, Honeywell Analytical and the Rotork's Defendants failure to

properly perform their job functions, their equipment failures, the failure to discover, report or repair equipment failures, to properly install equipment and the failure to monitor or detect dangerous conditions was the proximate cause of the injuries and deaths at the plant and of the hospitalized workers. The PeMex plant owner and operator, Draeger, Firebus, I & C, and Honeywell Analytical agreed to provide technical, safety, operating, engineering and procedure rules, regulations and to ensure that the PeMex gas processing plant and other PeMex gas plants was free from escaping gas, that procedures and equipment would be in place to monitor and detect, pressures and plant conditions to prevent gas explosion and fires such as occurred at the Reyonosa plant. If these defendants had properly performed their job and the PeMex defendant would have implemented the safety, inspection, maintenance and repir recommendations the Defendants provided the explosion and fire would have been prevented. The failure to properly perform the duty taken on by these defendants leading to the explosion and fire is a proximate cause of Plaintiffs damages.

117.     The pipeline Defendants failed in their duty to monitor the transportation, delivery or sale of the explosive gas. They violated Texas Railroad Commission rules and regulations, Department of Transportation rules and regulations and API protocol for the safe transportation, storage and handling of hazardous materials. The pipeline Defendants had a duty to the ultimate users of the gas to deliver the gas in a safe manner. This includes the duty to inspect and contract for the safe transportation and handling of the gas at the metering point and at the facility. No inspection of the metering stations, facility or storage tanks or delivery system was performed by the pipeline defendants. The pipeline Defendants claim they are only responsible for the safe delivery of the gas

to the border, however, that ignores the fact no metering station is present in the middle of the Rio Grande, and that even should "ownership" somehow begin to transfer at the border a complete transfer of ownership cannot occur until the gas is metered for sale, which happens at the plant. Defendants' duty under the rules and regulations promulgated by the Texas Railroad Commission does not allow transfer to an unsafe facility. The pipeline Defendants had a duty to ensure the facility where the natural gas was sold and delivered to was safe, had the proper certificates and regulatory authority , was not defective, had been inspected and certified by proper agencies and was able to safely accept, store and transport a hazardous product like natural gas. Clearly, the pipeline defendants violated their duty for at least as long as the various plant equipment and systems were malfunctioning which conduct constitutes negligence and gross negligence.

118.    Plaintiffs would show that more detailed evidence of the allegations contained within the complaint will be developed as discovery is obtained. What can be said now is that without the negligence of the various defendants, including the plant owner and operator defendants, contractor defendants and equipment defendants, the explosion and injuries would not have happened.

119.    As a direct and proximate cause of the Defendants' negligence, Plaintiffs suffered damages in the amount to be proved at trial. Plaintiffs JUAN JOSE VAZQUEZ TREVINO, VICTOR MANUEL GOMEZ VARGAS, DAMARIS GUERRA GARRIDO DE MARTINEZ, OMAR ARELLANO ROCHA, ANGEL CARLOS MARIE MORALES, ANGEL RAFAEL MARIE VELASQUEZ, FELIPE JESUS MORALES PEREZ, VICTOR CHAVEZ MARQUEZ, VICTOR PEREZ TOMAS, FRANCISCO JAVIER HERNANDEZ MARTINEZ, HILARIO GUTIERREZ QUIRINO, JAIME

CRUZ HERNANDEZ, JOSE ROBERTO ORTIZ MARQUEZ, JESUS PLIEGO LANDA, RICARDO DE JESUS MERCADO RODRIGUEZ, LUIS CARLOS MUNOZ MARTINEZ, ULISES RIOS MORENO, ROSARIO GERONIMO DIAZ, BRUNO ULISES AVENDANO ROJAS, ULISES RIOS PECINA, JOSE LUIS ZAMORA, AND IGNACIO CEDILLO AGUILAR suffered fatal injuries that led to their untimely deaths. Plaintiffs JAVIER ALVAREZ DEL CASTILLO, CARLOS ALBERTO GUZMAN HUESCA, JOSE LUIS HERNANDEZ HERNANDEZ, HERMINIO MARTINEZ OSORIO, MIGUEL SANCHEZ CRUZ, ARELITO MARTINEZ MORELOS, LUIS JAVIER MENDIOLA CHAVEZ, ARON GARCIA FLORES, JOSE LUIS MARTINEZ NOLASCO, JUAN RAMON MUNOZ MEZA, JAVIER MARTINEZ DEL ANGEL, ARCENIO SANCHEZ LUCIANO, JESUS GUADALUPE CAMARILLO VALDEZ, MARCO ANTONIO DUARTE MEDELLIN, CARLOS ALBERTO MARTINEZ received serious, life threatening and disabling injuries. Nothing Plaintiffs did or failed to do caused and/or contributed to their injuries and death.

## V. CAUSES OF ACTION

120.    Plaintiffs incorporate the causes of action for negligence, breach of implied warranty, violation of Plaintiffs civil rights, product liability contained in the previous paragraphs against the PeMex defendants, the  safety defendants inspection and monitoring defendants, the plant operating system defendants and, the Plant operator defendants, along with the equipment and process supplier defendants.

121.    <u>Negligence:</u>   The PeMex Defendants, as more fully described herein, are the owners and operators of a natural gas plant and various pipelines, which supply the plant,

with product. PeMex and the P. M. I. defendants are responsible for the:

A. Design;

B. Maintenance;

C. Inspection;

D. Operation;

E. Engineering;

F. Repair;

G. Monitoring and detection of gas escapes, pressure, both low pressure and high pressure;

E. Safety, including ensuring that the operating systems function correctly, that the safety systems, including the monitoring and detection systems operate correctly, that there is no malfunction or rupture or structural weakness or loss of integrity, resulting from any equipment failure or personnel mistake.

122.    PeMex, and P. M. I., along with those responsible for various valves, safety equipment, or safety systems that together or separately failed caused and/or failed to prevent or warn of the impending catastrophic release of gas, explosion and fireball that consumed the plant resulting in numerous deaths, burns and severe injuries and losses. The PeMex defendants are responsible for the safe operation of the plant and as such were negligent resulting in the plant explosion. The PeMex defendants are responsible for implementing a safety process including the monitoring and detection of gas escapes, system failures, monitoring or process defects, equipment failures, valve failures or defects, and to ensure the gas metering and processing, including the condensate and water storage and separation is done safely. PeMex, including its engineers, operators,

accountants and safety personnel were each negligent resulting in the explosion and fire and the injuries and deaths.

123.    The operating and monitoring system supplied by defendants Honeywell and Emerson was defective and they were negligent in the following manners:

A. The operating and monitoring system failed and was defective in that it was manufactured defectively so that it never operated as it was intended and did not provide necessary information about the operating conditions for the plant, including but not limited to failures to detect high/low pressure in the pipelines, failure to detect defective driers and separators, failure to apprise plant operating personnel of the equipment failures and the low and high pressure, failures to monitor the gas and pressure and failures to detect over and under pressures, escaping gas and failed equipment;

B. The operating and monitoring system was designed defectively in that it failed to operate as a system of this type should have operated in failing  to detect over and under pressure within the system, failing to provide necessary operating information for the plant including the piping over and under pressure, defective driers, defective separators, diverted gas, corrosion of the piping and weakening of the interior of the piping, failing to detect escaping gas, gas that was not metered or gas that was diverted, failing to accurately measure condensate and water entrapped within the gas and failing to alert operations personnel of these conditions.

C. The operating and monitoring systems were defective in that they failed to integrate between the original Honeywell Analytical system and the digital Emerson Electric Delta "V" system as advertised. The systems were never fully operational either

apart or integrated and were in constant need of repair or maintenance. The systems were defectively marketed.

124.    The valves, safety valve or relief valve supplied by the various Rotork and Remote Control Defendants were defective and the defective condition was a producing and proximate cause of Plaintiffs' damages.

A. The Rotork or Remote control valve was defective in that it was not properly manufactured to detect over or under pressure and shut off. It was defectively designed in that it could be improperly set and fail to detect over or under pressure and it failed to relieve pressure allowing the gas to increase the size and scope of the explosion and to continue to feed the initial fire after it should have depleted its fuel source.

B. The valve was negligently installed by Rotork or Remote control employees or by others under their direction. The valve was supplied from Rotork Inc, Rotork Houston, or Rotork Control, Inc., or Remote control, Inc. by and through their Houston, Texas plant or through employees employed by one of the companies in Houston, Texas. The valve, design, installation, maintenance, and inspection were performed out of Houston, Texas or under the direction of Rotork Texas employees by Rotork Mexico employees. The technical information regarding the valve, installation, maintenance, and inspection was provided by employees of the company in Houston, Texas.

125.    The operating system and monitoring systems supplied by Honeywell Analytics and Emerson Electric were defective in their failure to determine the equipment failures, failure to report the process equipment failures including the failure to be able to monitor gas, water or condensate, the failure to monitor the metering stations and to be able to report the drop in metered levels of gas or storied water and condensate. The defendants

were negligent in inspection of the equipment or in failing to engage in a regularly scheduled maintenance program to discover and replace defective equipment. These defendants breached their warranty of implied merchant ability and the equipment and services were not fit for their intended use. The pipeline defendants were negligent in failing to inspect the facilities, failing to ensure the premises and processes were safe for their intended uses and that there were no dangers of explosion present. The pipeline defendants were negligent in failing to ensure the plant met the TRRC standards for handling natural gas or explosive or hazardous materials.

126.    The PeMex defendants are responsible for the design, construction and operation of the plant in a safe manner. PeMex and the PeMex owners and operators of the plant were responsible for the maintenance of the plant and to ensure all safety equipment and critical monitoring, detection and operating systems were in safe working condition. PeMex allowed the deterioration of critical operating equipment without any provisions for inspection or maintenance of said equipment. The deterioration of the pipe integrity is alleged to have been reported to PeMex and a lack of care regarding critical safety equipment or perhaps other considerations led them to ignore the conditions that led to the explosion and catastrophic failures. PeMex was in the best position to have prevented this accident and instead of acting as a reasonably prudent operator they failed to act at all resulting in the death AND INJURY OF OVER FORTY CONTRACT EMPLOYEES!

127.    The PeMex defendants are also guilty of spoliation of evidence and withholding of evidence. Various pieces of defective piping have been taken from the plant and not kept safe for inspection by experts in this case. Plaintiffs have been unable to obtain the public release of the accident report detailing the causes of the accident and guilty parties.

Plaintiff is entitled to an instruction regarding these issues and an inference that any evidence that has been withheld would have favored Plaintiffs.

128.     The PeMex defendants are guilty of civil rights and RICO violations as more specifically spelled out in this complaint.

129.     The PeMex Defendants are responsible for the engineering involving the design, operation and maintenance of the plant and were negligent in these activities and said negligence was the proximate cause of Plaintiffs damages.

130.     The PeMex defendants were responsible for the safe operation of the plant including the duty to insure that any maintenance, safety or inspection information performed by other defendants that was transmitted or provided to the PeMex plant defendants was done so properly. Plaintiffs relied upon PeMex to do so to insure that the plant was maintained in a safe operating condition.

131.     The Defendants Firebus, Drager and Honeywell were responsible for the safety of the plant through the training, monitoring and inspection of the plant operations and equipment and by their responsibility to provide safety equipment to the plant.

132.     Defendants Honeywell Analytical and Emerson Electric were responsible for the plant operating system and for the integration of the "Delta V" operating system along with the "Total Plant solutions" operating system. It is believed that as a result of the divergence of gas or the conversion of gas, the contractor personnel were somehow convinced to not fully comply with the integration of the systems so that neither was ever fully operational and resulted in lost gas, failed plant systems and ultimately in the damages and deaths of plaintiffs.

133.    All Defendants are jointly and severally responsible for the design, construction, operation and safety of the plant, pipeline and their operating systems. Failure in the design, operations and maintenance and of the safety valves, release valves, operating systems and safety systems including the design, installation and maintenance of those systems, resulted in the explosion, fire and fireball which caused the death, burns an severe personal injuries to Plaintiffs.

134.    All Defendants were negligent in the design, maintenance and upkeep of the plant, the transportation of the natural gas, the monitoring of the pipeline, plant and valves, the installation, maintenance and upkeep of the safety and alarm systems, the monitoring, maintenance and design of the safety system, the relief valve system and the monitoring systems and alarm systems. The defendants failed to follow TEXAS RAILROAD COMMISSION or Interstate Commerce Commission Rules and Regulations applicable to the safe transportation, storage and refining of natural gas. Defendants also failed to meet industry standards for the installation, maintenance or monitoring of relieve valves, safety valves the alarm system and the control, monitoring and operation of those systems. Defendants fail to follow industry regulations as well as State, Federal and local regulations adopted for the specific purpose of preventing the harm, which resulted herein.

135.    Negligence Per Se:    The violation of the aforementioned local, state, federal and industry regulation that governs the operations at the refinery and were intended to protect individuals such as Plaintiffs was the direct and proximate cause of Plaintiffs' damages. Despite the existence of said regulations and despite Defendants' knowledge of the existence of the application of the regulations, Defendants knowingly, willfully and

wantonly violated the regulations leading to the catastrophic explosion and loss of lives and damages to Plaintiffs. Defendants had knowledge of the regulations under which the pipelines, plant, refinery and operation were to be governed, but despite this knowledge made conscious decisions to operate outside the rules and regulations that were meant to protect Plaintiffs from the harm associated with the dangers involved on the transportation, storage and refining of natural gas.

136.    <u>Knowledge of outside action:</u> In previous explosions involving natural gas plants, Pemex and various sub-contractors and the government alleged that the explosions were the result of "sabotage", "theft", or acts of violence or vandalism against the operator or government. Defendants are on notice of these actions or alleged actions and the possibility that "gangs", "cartels", "thieves" or "vandals" may take action to attempt to steal, sabotage or attack the refinery, pipeline or storage facilities. Defendants had notice of these possibilities and owed a duty to Plaintiffs and those in the surrounding areas, including those along the pipeline route from Texas through Hidalgo County to the refinery that the pipeline, plant, refinery and storage facilities would remain safe and protected from any actions that would resulted in the type explosion and fire that resulted in the death, severe burns and damage experienced by Plaintiffs. The Defendants owed a duty to Plaintiffs and those living along the pipeline and within close proximity to the plant, refinery, storage facilities and pipeline to ensure that an explosion such as the one made the basis of this suit did not occur.

137.    <u>Plaintiffs' Right to Quiet Enjoyment:</u> In addition to the physical and mental damages resulting from Defendants' actions, Plaintiffs, whether employees, subcontractors' employees, or neighboring land owners are entitled to the "quiet

enjoyment" of their work and premises. The PeMex plant owner and operator and the pipeline Defendants,' more specifically, Kinder Morgan Gas Natural de Mexico, Kinder Morgan, Inc., Kinder Morgan Energy Partners, LP, Kinder Morgan Management LLC, El Paso Pipeline Partners, LP,  El Paso Pipeline GP Company LLC, Tennessee Pipeline Inc., Tennessee Pipeline Partners, Inc., negligence, negligence per se, violations of federal, state and local rules and regulations and industry standards and failure to protect and operate Defendants' pipeline, plant refinery and storage facilities as a prudent operator, designer or pipeline/plant owner,  interfered with and damaged Plaintiffs quiet enjoyment of the premises, plant, work, business or property. The Plant owner and operator and pipeline Defendants are responsible to ensure that hazardous material such as natural gas is NOT delivered, transferred, sold or provided to a facility not able to safely store, process, refine or transport the material. In this instance these Defendants failure to ensure the plant was not defective, was operating under industry safety standards, had adequate safety equipment and procedures in place to safely receive the natural gas and that the plant and equipment were not defective was the proximate cause of Plaintiffs damages.

138.    Res Ispa Loquitur: Plaintiffs would show that the doctrine of "res ispa loquitur" applies. Without the negligence of  *the PeMex plant owner and operator* Defendants, the equipment manufacturer Defendants, Rotork and/or Remote Control, Honeywell Analytical, and Emerson Electric and the safety, engineering and technical Defendants, P. M. I. Holdings North America, the PeMexc plant operator and owner, Draeger, Firebus, I & C, Honeywell Analytical, PeMex, and the commercial supplier defendants PeMex Commercio Internacional Sa deCV, P.M. I. Norteamerica, Sa de CV and PeMex

procurement International, Inc. the explosion, accident and damages to Plaintiffs would not have occurred. Plaintiffs would show that Defendants had control over the pipeline, refinery, plant, technical, safety, engineering of the plant, processes, and safety procedures,  along with the storage and metering facilities and plant supplies and services sufficient to ensure that without negligence on their part, no explosion would have occurred and as such they are responsible for the accident to Plaintiffs for all damages.

## VI. EXEMPLARY DAMAGES/GROSS NEGLIGENCE

139.    Alternatively, and without waiving the foregoing, Plaintiffs would show the *the various PeMex plant operator and owner, engineering, technical services, and safety* Defendants , more specifically identified after discovery when the PeMex entity responsible for which exact activity in their plant is identified,  conduct described herein constitutes gross negligence as defined by the Texas Civil Practice and Remedies Code §41.001 (11) (A)-(B) and under the applicable federal laws. Defendants acted with actual malice and with conscious indifference to the rights of others in violation of the governing laws, rules and regulations in place to protect Plaintiffs from the extreme risk of harm. Further, the pipeline defendants, Kinder Morgan Gas Natural de Mexico, Kinder Morgan, Inc., Kinder Morgan Energy Partners, LP, Kinder Morgan Management LLC, El Paso Pipeline Partners, LP,  El Paso Pipeline GP Company LLC, Tennessee Pipeline Inc., Tennessee Pipeline Partners, Inc. involved in the transportation, of the natural gas were guilty of gross negligence by failing to inspect, or ensure the facility which received the product met industry standards for processing and storage of dangerous materials such as natural gas. The storage and refining of natural gas and natural gas products involves an

extreme risk of harm and requires the companies involved to follow the rules, regulations, procedures and processes in place to ensure the risk of harm is protected against or minimized through safety procedures and equipment. The PeMex defendants including the plant owner/operator, PeMex itself and Draeger, Firtebus, I & C< and Honeywell Analytical assumed the duty to protect the plant and its employees by providing technical, engineering and safety procedures, processes, guidelines and equipment to the gas processing plant top prevent the escape of gas, a gas fire or gas explosion. These Defendants were guilty of gross negligence and subject to punitive damages for their complete and utter failure in this matter. Each Defendant was aware of the risk of harm, was aware their conduct violated the rules, regulations, laws, standards and processes in place to protect against the harm but proceeded to place Plaintiffs in harms way without warning that Defendants were not operating the pipelines, refinery or storage facilities within the accepted norms of those in the natural gas industry.

140.    Breach of Implied Warranty: Defendants Emerson Electric Company, Honeywell Analytical and Rotork and those associated with them are guilty of breaches of the implied warranty of merchantability with regard to the sale, service and maintenance of the products they sold to the plant. Included is the plant operations systems sold to the plant, along with the safety or relief valves, as well as the monitoring or metering equipment. As such, the four year statute of limitations should apply to these Defendants from the date of sale of their product or of the last service of the equipment involved in this explosion.

141.    The plant design PeMex defendants, P. M. I. Holding North America, Inc., and the PeMex entity which owned and operated the plant, knew or should have known that

the plant's design would lead to piping corrosion or deterioration which would ultimately lead to the plant explosion that actually occurred. Consideration of the engineering knowledge of the PeMex defendants, one can only conclude that they knew or should have known of the repairs or design changes that were necessary for the plant and operations personnel safety and chose for economic reasons to not implement these changes.

142.     The safety equipment and operations Defendants Draeger, I & C and Firebus are guilty of negligence and gross negligence in their failure to ensure, by industry standards, that safety equipment and operating, monitoring and detection equipment was present in the plant and in the piping. The plant should have been equipped with permanent gas detection and monitoring systems inside the plant and a pressure monitoring system inside the piping to monitor over and under, (high and low), pressures which affect the metering, and provide information regarding equipment failure and problems that need repair or maintenance without discovery. It is unknown which of these Defendants had what responsibility at this time. It was also the responsibility of the PeMex plant operations and repair, maintenance and inspection personnel to ensure this equipment was in place and operational. The failure of PeMex plant ownership or operational personnel to ensure this equipment was in place was negligence. These failures were both a proximate and producing cause of Plaintiffs damages and injuries.

## VII. CHOICE OF LAW

143.     Plaintiffs would show that the choice of law factors adopted by the United States Supreme Court in <u>Gulf Oil v. Gilbert</u> favor the application of Texas law to this dispute. The factors will undoubtedly be briefed prior to any decision by the court but

sway heavily in favor of Texas law in this case. However, in the event that the laws of Mexico are held to govern this case, Plaintiffs would show they are entitled to received damages based on the doctrine of "MORAL" damages or unlimited mental anguish and pain and suffering damages, economic damages of at least an equivalent of $2,000,000.00 per Plaintiff or more if applicable and all other damages allowed by Mexican law,and damages for "PUNISHMENT" akin to punitive damages that is unlimited under the Mexican "MORAL" law.

## VIII. DISCOVERY

144.     Plaintiffs would show that various Defendants have filed numerous motions upon the removal of this case to Federal Court. The majority of these Motions while couched in the guise of 12(B)(6) motions to dismiss for failure to state a cause of action are in fact pre-mature motions for summary judgment. Plaintiffs would show that they are entitled to due process of law and to discovery on the issues contained in Defendants' Motions prior to any decision on the merits. Defendants Motions are in fact Motions for Summary Judgment which are premature until discovery is conducted on the issues involved in this case. Plaintiffs would show that Defendants have couched their Motions in procedural terms to take advantage of the fact the explosion occurred just over the border in Mexico instead of at the ExxonMobil refinery in Baytown. However, if the same Motions were filed in an explosion in Baytown, no one would take them seriously until at least after sufficient discovery had been undertaken to determine if Plaintiffs could prove their case. Most importantly, Plaintiff is not privy to the same information regarding the part each Defendant played in the explosion. The ownership of the plant is at least publicly referred to as generically, "PeMex." Without discovery on the issue, Plaintiffs cannot identify the

specific actions of each Defendant that is necessary to the proof of their allegations in this serious case. Here, no public information is available because Defendants control the media and no investigative press is digging into the story. Defendants do not have to release information and will actually fight to keep information regarding any Defendants' involvement in the explosion as a secret. Therefore, the only means Plaintiffs have to develop this information is through the discovery process in this Court/

## ALTER EGO AND VICARIOUS LIABILITY

145.    The PeMex defendants are subject to being sued for the actions, activities and joint enterprise, co-mingling of employees and equipment and failing to follow corporate formalities so as to act in concert or as one enterprise or company. The Defendants are also liable for the actions and inactions of each other under the theory of vicarious liability. In this case, PeMex directed in, through one or more of its entities, the actions of other corporate entities or other defendants.

## GROSS NEGLIGENCE AND PUNITIVE DAMAGES

146.    The actions of the PeMex plant operator and owner Defendants, PeMex and P. M. I., engineering and safety Defendants, PeMex, PeMex procurement International, PeMex Commercial Internacional,  and P. M. I. supplier and commercial activities Defendants and PeMex, were committed with conscious indifference to the rights of others, with malice and in violation of civil and criminal statutes so as to subject the defendants to a finding of gross negligence and the imposition of punitive damages.

147.    *The PeMex and P. M. I.*  Defendants acted in concert and with a scheme that benefitted them in unethical and illegal ways and led to the plant being operated outside of industry standards. Plaintiffs reserve the right to request the Court for leave to amend

once discovery is undertaken to clarify which of the various acts and Defendants violated criminal statutes, which engaged in violations of industry standards and the exact nature of the malice, fraud and knowing conduct of Defendants leading to the explosion and deaths of over forty (40) individuals, the horrific burning of many others, the physical damages experienced by other Plaintiffs and the severe emotional damage to the families who have lost not only their means of economic support but their fathers, husbands and leaders.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs JAVIER ALVAREZ DEL CASTILLO, CARLOS ALBERTO GUZMAN HUESCA, NORA SILVIA CASTILLO ALFERES, INDIVIDUALLY AND AS NEXT FRIEND OF JUAN MAXIMILIANO VAZQUEZ CASTILLO, DENISSE GUERRERO GRANADO, INDIVIDUALLY AND AS NEXT FRIEND OF ROSEMARY DE LA FUENTE, JUAN EDUARDO MARTINEZ NAVARRO, INDIVIDUALLY AND AS NEXT FRIEND OF DIBANHI SARAI MARTIEZ GUERRA, EDUARDO AZAEL MARTINEZ GUERRA, SANDRA EDITH DURAN AS NEXT FRIEND OF SAMIRA ARELLANO, JOSE LUIS HERNANDEZ HERNANDEZ, HERMINIO MARTINEZ OSORIO, MIGUEL SANCHEZ CRUZ, ARELITO MARTINEZ MORELOS, LESLY ELIZABETH FLORES, LESLY ELIZABTH FLORES, MARIA LUZ MORALES PEREZ, JOSE MORALES REYES, BEATRIZ MARQUEZ LEON INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF VICTOR CHAVEZ MARQUEZ, EULALIA TOMAS DEL ANGEL AND VICTORINO PEREZ GARCES AS REPRESENTATIVES OF THE ESTATE OF VICTOR PEREZ TOMAS, LUIS JAVIER

MENDIOLA CHAVEZ AND ANAILEM MORA GARCIA, ARON GARCIA FLORES AND IRMA FERREL CASADOS, CRISTAL ANAHI OLVERA RAMIREZ INDIVIDUALLY AND AS NEXT FRIEND OF ESTAFANIA ANAHI HERNANDEZ OLVERA, MARIA DE JESUS MARTINEZ CASARES, ELEAZER HERNANDEZ GUTIERRIEZ, DIANA ISABEL VASQUEZ SILVA, GUADALUPE PENA GALVAN INDIVIDUALLY AND AS NEXT FRIEND OF HANNIA ALEXANDRA CRUZ PENA AND STEPHANIE LIZBETH CRUZ PENA AND GRECIA MICHEL CRUZ PENA, DELFINA NATIVIDAD VILLANUEVA LOREDO, TANIA YAREN GARCIA ACUNA, MARIA TERESA RODRIGUEZ PANCARDO, PATRICIA MUNOZ BANDA, JOSUE ABRAM MUNOZ, CARLOS I. MUNOZ, BRENDA BERENICE MUNOZ, MARIA SAN JUANA MORENO ESCOBAR AND MARCELINO RIOS PECINA, DELTA ALICIA ZAMORA, INDIVIDUALLY AND AS NEXT FRIEND OF IRVING FERNANDO ZAMORA GALVAN, JORGE ALFREDO ZAMORA GALVAN, AND JOSE LUIS ZAMORA GALVAN, LETICIA AGUILAR-SANCHEZ, CESAREA GUADALUPE MARTINEZ MARTINEZ, JOSE LUIS MARTINEZ, JUAN RAMON MUNOZ MEZA, RUTH SARAHI CANTU VASQUEZ INDIVIDUALLY AND AS NEXT FRIEND OF ULISES NOEL AVENDANO, EVELYN MARISOL LUNA SANTOS, JAVIER MARTINEZ DEL ANGEL, ARCENIO SANCHEZ LUCIANO, JESUS GUADALUPE CAMARILLO VALDEZ, MARCO ANTONIO DUARTE MEDELLIN AND CARLOS ALBERTO MARTINEZ pray that Defendants be cited and required to answer herein according to law, and that upon final hearing of this cause, Plaintiffs recover of and from the Defendants, jointly and severally, the full amount of their respective damages, costs of court, attorneys' fees, pre-judgment and

post-judgment interest, general relief, from Defendants jointly and severally for punitive damages in such amount as may be found by the jury together with post-judgment interest thereon, and for such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled including but not limited to:

a. Pain and suffering in the past;

b. Pain and suffering in the future;

c. Mental anguish in the past;

d. Mental anguish in the future;

e. Past medical expenses;

f. Future medical expenses;

g. Physical impairment in the past;

h. Physical impairment in the future;

i. Physical disfigurement in the past;

j. Physical disfigurement in the future;

k. Pre-judgment interest;

l. Post-judgment interest;

m. Exemplary damages;

n. Loss of past wages;

o. Loss of future wages;

p. Loss of wage earning capacity;

q. Loss of use;

r. Property damages;

s. Funeral and burial expenses;

Plaintiffs' Third Amended Complaint
Castillo et al vs. PMI Holdings, et al

Page **79** of **80**

t. Wrongful death damages;

u. Survival damages and

v. Consequential damages;

w. Loss of consortium in the past;

x. Loss of consortium in the future.

Respectfully submitted,

COLE, EASLEY, SCIBA& WILLIAMS, P.C.

Justin L. Williams
Efile - jlwilliams@colefirmservice.com
Correspondence – jlwilliams@ceswlaw.com
TBN: 21555800
302 W. Forrest Street
Victoria, TX 77901
(361) 575-0551 Telephone
(361) 579-4435 Facsimile

**PLAINTIFFS RESPECTFULLY REQUEST A TRIAL BY JURY.**

### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2015, a true and correct copy of the above and foregoing document was served via CM/ECF upon counsel of record here in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure.

By: _____
Justin L. Williams

Plaintiffs' Third Amended Complaint
Castillo et al vs. PMI Holdings, et al

Page **80** of **80**